**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| VELOCITY PATENT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No: 1:13-cv-08419 |
| | ) | |
| v. | ) | Hon. Thomas M. Durkin |
| | ) | Hon. Michael T. Mason |
| FCA USA LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NONPARTY ROBERT BOSCH LLC'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF VELOCITY PATENT LLC'S MOTION TO COMPEL**

## LIST OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. A | Letter from Velocity's counsel to Bosch, and subpoenas (Apr. 20, 2017) |
| Ex. B | Declaration of Kay Stepper (Aug. 28, 2017) |
| Ex. C | Subpoenas (June 6, 2017) |
| Ex. D | Emails between Bosch's counsel and Velocity's counsel (June 30 to July 14, 2017) |
| Ex. E | Email from Bosch's counsel to Velocity's counsel (July 19, 2017) |
| Ex. F | Email from Bosch's counsel to Velocity's counsel (Aug. 10, 2017) |
| Ex. G | Emails between Bosch's counsel and Velocity's counsel (June 8 to June 28, 2017) |
| Ex. H | Z. McCormick CV (sent by Velocity's counsel on June 16, 2017) |
| Ex. I | C. Thompson CV (sent by Velocity's counsel on June 16, 2017) |
| Ex. J | U. Buy CV (sent by Velocity's counsel on June 16, 2017) |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION: VELOCITY IMPROPERLY DEMANDS COMPLIANCE OF NONPARTY BOSCH IN THE INCORRECT DISTRICT, AND IT REFUSED BOSCH'S REASONABLE EFFORTS TO PROVIDE APPROPRIATE DISCOVERY IN LIEU OF THE UNDULY BURDENSOME PRODUCTION OF BOSCH'S TRADE SECRET SOURCE CODE AND DOCUMENTS .................................................................................1

II. FACTS: VELOCITY DEMANDS FAR MORE THAN WHAT A NONPARTY IS REQUIRED TO PROVIDE ...................................................2

    A. BOSCH'S SOURCE CODE AND RELATED DOCUMENTS ARE CRITICAL TRADE SECRETS COVERING REVOLUTIONARY TECHNOLOGY .........................................................................................2

    B. BOSCH ALREADY NEGOTIATED IN GOOD FAITH FOR A REASONABLE COMPROMISE TO VELOCITY'S SUBPOENA FOR SOURCE CODE AND RELATED DOCUMENTS ......................................3

III. LEGAL STANDARD ..................................................................................6

IV. ARGUMENT ..............................................................................................7

    A. VELOCITY'S MOTION SHOULD BE DENIED BECAUSE THE INFORMATION SOUGHT IS STORED IN THE EDMI, MAKING IT THE PROPER COURT OF COMPLIANCE ......................................7

    B. VELOCITY'S MOTION SHOULD BE DENIED BECAUSE BOSCH, A NONPARTY, ALREADY OFFERED SUFFICIENT DISCOVERY TO NEGATE THE NEED FOR VELOCITY'S HIGHLY INVASIVE REQUEST .......................................................8

        1. THE PRODUCTION VELOCITY SEEKS IMPOSES GREAT DANGER AND RISK ON THE SECURITY OF BOSCH'S SOURCE CODE AND TECHNICAL DOCUMENTS..............................8

        2. BOSCH HAS ALREADY PRODUCED AND OFFERED SUFFICIENT DISCOVERY TO NEGATE THE NEED FOR VELOCITY'S HIGHLY INVASIVE DISCOVERY REQUEST..............................................................................11

        3. BOSCH'S DOCUMENTS, OFFERED DECLARATION, AND OFFERED DEPOSITION ARE SUFFICIENT ALTERNATIVES IN VIEW OF THIS COURT'S CLAIM CONSTRUCTION ORDER .....................................................12

**C.**     IF THE COURT WERE TO GRANT VELOCITY'S IMPROPER
        MOTION, A SPECIAL MASTER SHOULD BE APPOINTED TO
        SAFEGUARD BOSCH'S TRADE SECRETS .....................................................14

**V.**    CONCLUSION...............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ariel v. Jones*,
693 F.2d 1058 (11th Cir. 1982) ...................................................................................7

*Beam Sys. v. Checkpoint Sys.*,
No. 95-cv-4068, 1997 U.S. Dist. LEXIS 8812 (C.D. Cal. Feb. 10, 1997) .............................11

*Generac Power Sys., Inc. v. Kohler Co.*
11-cv-01120, 2012 WL 2049945 (E.D. Wis. June 6, 2012) ................................................7, 14

*Hartley Pen Co. v. United States District Court*,
287 F.2d 324 (9th Cir. 1961) .......................................................................................6

*In re Subpoena to Chronotek Sys., Inc.*, Misc. No. 07-0279, 2007 WL 2177013
(S.D. Tex. July 27, 2007) ...............................................................................................8

*Microsoft Corp. v. Multi-Tech Sys.*,
No. 00-cv-01412, 2001 U.S. Dist. LEXIS 23155 (D. Minn. Dec. 14, 2001) ..........................9

*Morrow v. Air Ride Techs., Inc.*,
No. IP-05-113, 2006 WL 559288 (S.D. Ind. Mar. 6, 2006) ...................................6, 11, 12, 14

*Realtime Data, LLC v. MetroPCS Texas, LLC*,
No. 12-cv-01048, 2012 WL 1905080 (S.D. Cal. May 25, 2012) .......................................7, 13

*RGIS, LLC v. A.S.T., Inc.*,
No. 07-cv-10975, 2008 WL 186349 (E.D. Mich. Jan. 22, 2008) ..........................................15

*United States v. Amerigroup Illinois, Inc.*,
No. 02-cv-6074, 2005 WL 3111972 (N.D. Ill. Oct. 21, 2005) .................................................6

*Viacom Int'l Inc. v. YouTube Inc.*,
253 F.R.D. 256 (S.D.N.Y. 2008) ...................................................................................9

**Rules**

Fed. R. Civ. P. 26(b)(2).................................................................................................6, 11

Fed. R. Civ. P. 45(d) ...................................................................................................6, 8

Fed. R. Civ. P. 45(f)....................................................................................................6, 8

**Other Authorities**

8 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2043 (3d ed. 1998) .................................................................................................................6

7 J. MOORE'S FEDERAL PRACTICE § 34.03 (3d ed. 2010) .............................................6

*6 Major Law Firm Hacks in Recent History*, ABA JOURNAL (Mar. 1, 2017) .............................10

*Ransomware Attack on DLA Piper Puts Law Firms, Clients on Red Alert*, THE AMERICAN LAWYER (June 27, 2017) .......................................................................10

*Apple is working on self-driving car technology, Tim Cook confirms*, LOS ANGELES TIMES (June 13, 2017) .......................................................................11

*The Race for Self-Driving Cars*, THE NEW YORK TIMES (June 6, 2017) ........................................9

I.  **INTRODUCTION: VELOCITY IMPROPERLY DEMANDS COMPLIANCE OF NONPARTY BOSCH IN THE INCORRECT DISTRICT, AND IT REFUSED BOSCH'S REASONABLE EFFORTS TO PROVIDE APPROPRIATE DISCOVERY IN LIEU OF THE UNDULY BURDENSOME PRODUCTION OF BOSCH'S TRADE SECRET SOURCE CODE AND DOCUMENTS**

Robert Bosch LLC ("Bosch") is a nonparty to this case between Velocity Patent LLC ("Velocity") and FCA USA LLC ("FCA"). In its Motion to Compel, Velocity unnecessarily seeks Bosch's software source code and documents relating to its Adaptive Cruise Control ("ACC"), Forward Collision Warning ("FCW"), and Park Assist ("PA") features. These materials involve trade secrets vital to Bosch's position as a leader in the growing and highly competitive field of autonomous vehicle technology. Bosch expends significant resources to safeguard this information and tightly controls access thereto at a single Plymouth, Michigan facility. Therefore, Bosch opposes Velocity's Motion to Compel.

Disregarding Bosch's legitimate business interest and need to safeguard its trade secrets, Velocity improperly seeks production of this information. In its first letter to Bosch, Velocity admitted that it "believe[s] FCA has the ability to obtain and produce the requested information." (Ex. A at 1, emphasis added). Nevertheless, Velocity now seeks production of Bosch's trade secret information, allegedly relying on FCA's unverified representation that Bosch has "sole possession of source code and technical information" without fully explaining why the source code is necessary to its case.

Velocity's Motion should be denied for multiple reasons. First, it should be denied because the Eastern District of Michigan ("EDMI") is the proper place of compliance (which Velocity acknowledged), since Bosch's source code and the related documents are stored in Plymouth. Bosch did not consent to compliance in this district; thus, Velocity bought its motion here disregarding the Federal Rules of Civil Procedure. Second, Velocity's motion should be denied because the production Velocity seeks imposes great danger and risk on the security of

Bosch's proprietary source code and technical documents without justification. Bosch already offered alternative discovery, negating the need for source code and technical documents, and Velocity cannot articulate any basis for requiring more intrusive discovery on a nonparty.

The source code review procedure Velocity proposed is unacceptable to Bosch, because the Protective Order developed by Velocity and FCA cannot adequately protect Bosch's trade secrets. Therefore, if the Court grants Velocity's improper motion, Bosch requests the appointment of a special master as the only non-Bosch person to review Bosch's materials.

## II.    FACTS: VELOCITY DEMANDS FAR MORE THAN WHAT A NONPARTY IS REQUIRED TO PROVIDE

### A.    BOSCH'S SOURCE CODE AND RELATED DOCUMENTS ARE CRITICAL TRADE SECRETS COVERING REVOLUTIONARY TECHNOLOGY

In the four years since Velocity filed suit against FCA, autonomous vehicle technology has advanced significantly and is poised to be the next revolution in transportation. Indeed, the abilities for a car to park automatically, dynamically modulate cruise control speed, and anticipate collision, are the foundations of vehicular automation. (Ex. B ¶¶ 4, 5.) Success of these functions depends on sophisticated algorithms that are products of years of proprietary research, development, and testing, involving thousands of engineers and researchers. (*Id.*) Bosch entities worldwide, including Robert Bosch LLC, have invested hundreds of millions of dollars to develop this technology. (*Id.*) Bosch's source code is a direct product of its unique innovation, not a mere adaptation of industry standards or publically-known algorithms. (*Id.*)

Bosch has expended significant resources to devote a portion of its Plymouth division to improving autonomous driving systems, including developing the functionality of ACC, FCW, and PA features. (*Id.* ¶ 6.) With the rapid advances in this field and fierce competition from other companies, the technology and functionality developed by Bosch in these features are critical to

2

its competitive advantage. (*Id.* ¶ 4.) They are unique and not available to other competitors, such as car and truck manufacturers, traditional automotive suppliers, and non-traditional suppliers, as well as tech companies that have taken an interest in autonomous vehicle technology. (*Id.* ¶ 10.)

Therefore, consistent with common industry practice, Bosch considers its source code trade secrets and takes great measures to protect it. (*Id.* ¶ 7.) Location control security measures include employee badge access, turnstiles, security cameras, and onsite security personnel present 24 hours per day, 7 days per week. (*Id.*) Electronic access control includes robust firewalls, employee IDs and passwords for accessing electronic files, and limited access to source code repositories. (*Id.*) Further measures include password protection for print jobs and limiting the ability to copy source code by blocking USB drives and other copying methodologies. (*Id.*) Access to Bosch's ACC, FCW, and PA source code is expressly limited to a select number of engineers in Plymouth who actively develop and maintain software on a need-to-know basis. (*Id.* ¶ 8.) Each of said employees executed a nondisclosure agreement. (*Id.*)

Maintaining secrecy of the source code is critical to Bosch's position in this highly competitive field. (*Id.* ¶ 9.) Therefore, it is of vital importance that Bosch exclusively controls the trade secrets embodied in its source code. (*Id.*) It is especially important that Bosch's trade secrets are not divulged to Velocity, a non-practicing entity whose sole managing member is a partner of Haynes & Boone, Velocity's counsel. In true patent troll fashion, Velocity exists for the sole purpose of filing nuisance lawsuits against automakers. Thus, Bosch's trade secrets are especially unsafe in the hands of Velocity, its counsel, and its hired "experts."

### B. BOSCH ALREADY NEGOTIATED IN GOOD FAITH FOR A REASONABLE COMPROMISE TO VELOCITY'S SUBPOENA FOR SOURCE CODE AND RELATED DOCUMENTS

Velocity recently subpoenaed Bosch for its source code, related technical documents, and depositions regarding the same. (Exs. A, C.) For four months, Bosch attempted to cooperate,

initially planning to allow the review of portions of source code truly pertinent to the technology Bosch supplies to FCA. Velocity's initial request appeared reasonable, of limited scope, and strictly tied to allegations at issue. Bosch eventually learned that Velocity requested far more than what a nonparty should be required to provide. Despite Bosch's attempts to work with Velocity, it soon became clear that Velocity would settle for nothing other than source code. As explained to Velocity, Bosch's source code is protected as trade secrets, so while Bosch could not agree to produce its source code, it nonetheless produced two sets of relevant technical documents and offered both a declaration and deposition of a Bosch engineer. Velocity alleges that the produced documents and the offered declaration and deposition fall short, but cannot explain why anything more is necessary to its case, and certainly has shown no justification for compromising Bosch's highly sensitive trade secrets.

Bosch's source code is built upon foundations of larger source code frameworks. (Ex. B ¶ 14.) Velocity's request to access the ACC, FCW, and PA source code puts the entire proprietary trade secret framework at risk, when less risky alternatives exist. (*Id.*) For example, to comply with Velocity's request, Bosch would have to implement burdensome safety measures to allow individuals who are not Bosch's employees to inspect its source code, while also attempting to safeguard the larger source code framework. (*Id.* ¶¶ 15, 16.) Bosch engineers who are knowledgeable of its source code would be required to devote time to observing Velocity's "experts" to ensure that they are not reviewing non-relevant portions of the framework. (*Id.*) Time Bosch engineers would devote to reviewing and observing Velocity's consultants would be time they could not commit to development activities critical to Bosch's ongoing customer obligations and competitive advantage in the autonomous vehicle field. (*Id.*) And even with these measures in place, the security of Bosch's source code cannot be guaranteed. (*Id.*)

4

Realizing the existing Protective Order was insufficient to protect its source code, Bosch proposed a procedure for Velocity to review the relevant source code. Velocity declined without proposing alternative terms to address Bosch's needs. As an alternative to source code review, Bosch offered to produce technical documents demonstrating how Bosch's software works. If the documents did not satisfy Velocity's needs, Bosch further offered to provide declarations stating that its technology does not include certain elements of the '718 patent claims, and subsequent depositions. If Velocity could show that, after having all the above, it still required source code, Bosch may allow limited source code review. (Ex. D at 2-3.)

On July 14, 2017, Bosch indicated that documents were available for Velocity, covering the ACC and FCW functions. (Ex. D.) On July 19, 2017, Bosch provided them. (Ex. E.) Bosch also informed Velocity that it was still collecting documents for the PA feature. As promised, Bosch provided PA technical documents to Velocity on August 10, 2017. (Ex. F.) Despite Bosch's productions and offers, Velocity continued to demand source code review without providing a sufficient reason why such an intrusive review of nonparty material was necessary.

On multiple occasions, Bosch made clear that the physical location of its trade secret source code and related documents made the EDMI the only appropriate compliance district for potential motion practice. Bosch has expended significant resources to devote a portion of its North American Automotive division to improving autonomous driving systems. (Ex. B ¶¶ 6, 12.) There are approximately thirty Bosch software engineers developing and maintaining the source code at the Plymouth facility. (*Id.*) No Bosch employees in Illinois have knowledge of or access to the source code at issue. (*Id.* ¶¶ 6, 12, 13) The Plymouth facility is over 250 miles from Chicago. Thus, with respect to its role as FCA's supplier, Bosch is located in Michigan.

Velocity, in fact, conceded that the EDMI is the proper compliance district, asking for Bosch's "consent under Rule 45(f) to transfer subpoena-related motions to the issuing court in the Northern District of Illinois." (Ex. G at 1.) Bosch did not consent. To the contrary, Bosch reiterated to Velocity that the EDMI is the proper district of compliance. Disregarding the rules, Velocity filed its motion to compel before this Court.

## III.  LEGAL STANDARD

Despite allowing discovery from nonparties, the Federal Rules prohibit imposing undue burden or expense on a nonparty subject to a subpoena. Fed. R. Civ. P. 45(d). The Seventh Circuit requires a heightened standard for discovery from a nonparty, "consistently h[olding] that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *United States v. Amerigroup Illinois, Inc.*, No. 02-cv-6074, 2005 WL 3111972, at *4-5 (N.D. Ill. Oct. 21, 2005) (giving nonparty status "special weight").

This standard is further heightened when a party seeks a nonparty's trade secret information. The party must "establish that the information is sufficiently <u>relevant and necessary</u> to his case to outweigh the harm disclosure would cause to the person from whom he is seeking information." 8 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2043 (3d ed. 1998) (emphasis added); 7 J. MOORE'S FEDERAL PRACTICE § 34.03 (3d ed. 2010). In doing so, "the burden rests upon the party seeking disclosure to establish that the trade secret sought is <u>relevant and necessary</u> to the prosecution or defense of the case." *Hartley Pen Co. v. United States District Court*, 287 F.2d 324, 331 (9th Cir. 1961) (emphasis added).

The Court should limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Morrow v. Air Ride Techs., Inc.*, No. IP-05-113, 2006 WL 559288, at *1 (S.D. Ind. Mar. 6, 2006) (citing Fed. R. Civ. P. 26(b)(2)). Courts have held that for both parties and

nonparties, depositions of an engineer employed by the source code owner, demonstrations of the software at issue, and production of software manuals are all appropriate substitutes for the production of source code. *Realtime Data, LLC v. MetroPCS Texas, LLC*, No. 12-cv-01048, 2012 WL 1905080, at *3 (S.D. Cal. May 25, 2012); *Generac Power Sys., Inc. v. Kohler Co.* No. 11-cv-01120, 2012 WL 2049945, at *2 (E.D. Wis. June 6, 2012).

## IV.     ARGUMENT

### A.     VELOCITY'S MOTION SHOULD BE DENIED BECAUSE THE INFORMATION SOUGHT IS STORED IN THE EDMI, MAKING IT THE PROPER COURT OF COMPLIANCE

As Bosch repeatedly reminded Velocity, the Northern District of Illinois ("NDIL") is not the proper place of compliance for Bosch's production of source code or related documents. *See Ariel v. Jones*, 693 F.2d 1058, 1060-61 (11th Cir. 1982) (affirming district court's quashing of a subpoena served at location that did not house the documents sought, noting that a "corporation may not realistically be considered fungible everywhere it does business," and that "it is unreasonable to assume that . . . local offices 'control' all documents kept at their respective corporate headquarters"). Bosch opposes inspection of any trade secret-related documents or source code, but any inspection would necessarily occur at its protected location: Plymouth, over 250 miles from Chicago. Plymouth is the only location where Bosch stores and controls its source code and related documents for the ACC, FCW, and PA features. (Ex. B ¶¶ 6, 12.) There, Bosch employs approximately thirty engineers for developing and maintaining the source code. (*Id.*) In contrast, there are no Bosch employees having access to the source code or supporting documents in Illinois. (*Id.* ¶¶ 6, 11, 12)[1] Thus, Bosch is located in Michigan, and the EDMI is a

---

[1] Indeed, references to "[v]arious Bosch facilities in the Northern District of Illinois" (D.I. 187 at 2) involve facilities of Robert Bosch LLC affiliates, but the Illinois-based affiliate employees have no access to the source code or relevant documents.

proper district for compliance.[2] For at least this reason, this Court should deny Velocity's Motion to Compel.

Previously conceding that the EDMI is the proper district, Velocity is aware that it is advancing frivolous arguments in the wrong venue. On June 28, 2017, Velocity sought Bosch's "consent under Rule 45(f) to transfer subpoena-related motions to the issuing court in the Northern District of Illinois." (Ex. G at 1.) Bosch did not consent. To the contrary, Bosch repeatedly informed Velocity that the EDMI is the proper district of compliance, and that Bosch does not retroactively consent to compliance in the NDIL. Therefore, Velocity's motion, filed outside the court for the district where compliance is required, must be denied. *See* Fed. R. Civ. P. 45(d).

### B. VELOCITY'S MOTION SHOULD BE DENIED BECAUSE BOSCH, A NONPARTY, ALREADY OFFERED SUFFICIENT DISCOVERY TO NEGATE THE NEED FOR VELOCITY'S HIGHLY INVASIVE REQUEST

#### 1. THE PRODUCTION VELOCITY SEEKS IMPOSES GREAT DANGER AND RISK ON THE SECURITY OF BOSCH'S SOURCE CODE AND TECHNICAL DOCUMENTS

Even if Velocity had demanded compliance with its subpoenas in the proper district, Velocity falls well short of meeting its burden and showing entitlement to Bosch's source code and additional documents. To start, Bosch already produced technical documents on July 19 and August 10, 2017. In its motion, Velocity focuses only on the quantity of documents produced, never explaining why the produced documents are insufficient. (*See* D.I. 187 at 7.) Bosch's technical documents and source code are important trade secret information that should not be freely subject to discovery. Courts routinely recognize that a company's trade secrets require a party seeking discovery thereof to surpass a particularly high threshold. *See, e.g.*, *In re Subpoena*

---

[2] On August 11, 2017, Bosch filed a Motion for Protective Order Prohibiting Discovery of Source Code in the Eastern District of Michigan. To date, Velocity has not responded to the Motion.

to *Chronotek Sys., Inc.*, Misc. No. 07-0279, 2007 WL 2177013, at *2 (S.D. Tex. July 27, 2007) ("There is no dispute in this case that the subpoenaed source code qualifies as a confidential trade secret . . . [thus, the party seeking discovery] must demonstrate that it has a substantial need for the material.") (citations omitted). The threshold is especially applicable in this case, as information related to Bosch's ACC, FCW, and PA features involves trade secrets critical to Bosch's self-driving technology. (Ex. B ¶ 4); *see also The Race for Self-Driving Cars*, THE NEW YORK TIMES (June 6, 2017), *available at* https://www.nytimes.com/interactive/ 2016/12/14/technology/how-self-driving-cars-work.html (describing competitiveness of the field). Velocity has not demonstrated a substantial need for Bosch's proprietary material in addition to the produced documents. Failing to satisfy its burden, Velocity cannot access Bosch's source code or additional documents.

The terms of the existing Protective Order are insufficient to protect Bosch's confidential materials, including source code. As a nonparty, Bosch did not have the opportunity to negotiate those terms. Courts recognize that even where "the protections set forth in [a] stipulated confidentiality order are careful and extensive," they are "nevertheless not as safe as nondisclosure [and] [t]here is no occasion to rely on them, without a preliminary proper showing justifying production of the source code." *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008); *see also Microsoft Corp. v. Multi-Tech Sys.*, No. 00-cv-01412, 2001 U.S. Dist. LEXIS 23155, at *19-21 (D. Minn. Dec. 14, 2001).

As an example of the inadequate protection, the Protective Order allows outside counsel and their "paralegals, technology specialists, and clerical employees"[3] access to source code.[4]

---

[3] The paralegals, technology specialists and clerical employees are not identified. Such employees may well be involved in software development; indeed, those identified as "technology specialists" might be associated with the development of competing source code,

9

(D.I. 137 at 4.) But, other than prohibiting these personnel from disclosing the source code, the Protective Order cannot guarantee that outside counsel's information technology systems sufficiently secure source code. Reputable legal industry journals have documented multiple recent "major law firm hacks," casting serious doubt on opposing counsel's ability to secure Bosch's source code. *6 Major Law Firm Hacks in Recent History*, ABA JOURNAL (Mar. 1, 2017), *available at* http://www.abajournal.com/magazine/article/law_firm_hacking_history; *Ransomware Attack on DLA Piper Puts Law Firms, Clients on Red Alert*, THE AMERICAN LAWYER (June 27, 2017), *available at* http://www.americanlawyer.com/id=1202791614770/Ransomware-Attack-on-DLA-Piper-Puts-Law-Firms-Clients-on-Red-Alert. Therefore, Bosch's source code is not safe in the hands of Velocity's counsel.

The Protective Order also allows "[o]utside experts or consultants" access to source code. (D.I. 137 at 4.) Velocity's "experts" pose significant conflicts of interest and may inadvertently disclose the code despite their best efforts to comply with the Court's order. For example, Mr. Zach McCormick is a recent college graduate who has worked as an engineer in five different companies since 2013. (Ex. H.) Mr. Christopher Thompson graduated in 2010 and worked as an engineer or consultant in three different jobs, providing "software development and project management services." (Ex. I at 1-2.) There is no guarantee that Bosch's trade secrets would be

---

and there is little protection to prevent Bosch's source code from being utilized, even inadvertently, into their work. If such an event occurs, others will be receiving at no cost the technology Bosch developed at an enormous expense.

[4] Velocity argues that the existing source code review procedure "is good enough for FCA," so it should be good enough for Bosch too. (D.I. 187 at 10-11.) Velocity's argument fails because it does not cite any evidence comparing the importance of Bosch's and FCA's respective source code, and how each company safeguards it. Furthermore, FCA does not speak for Bosch when it comes to the measures that are necessary for Bosch to safeguard its ACC, FCW, and PA source code. (*See* Ex. B ¶¶ 18, 19.)

sufficiently safeguarded in the hands of Velocity's "experts," given their ongoing roles as software engineers in various companies.

Once seen, source code cannot be unseen. (Ex. B ¶ 17.) There is no guarantee that Bosch's confidential source code and supporting technical documents would not trickle into the software engineering work of Velocity's "experts." (*Id*.) After an "expert" reads Bosch's source code and supporting documents, knowledge thereof may also be shared with Bosch's competitors, compromising Bosch's competitive advantage. Velocity's "expert" Professor Ugo Buy has consulted for Apple Inc. on at least four separate occasions. (Ex. J at 2.) Bosch considers Apple a competitor in the self-driving field, especially since Apple's CEO publicly confirmed its ambitions in this space. *Apple is working on self-driving car technology, Tim Cook confirms*, LOS ANGELES TIMES (June 13, 2017), *available at* http://www.latimes.com/business/la-fi-hy-apple-self-driving-20170613-story.html. The security concerns for Bosch to hand over its source code and documents to Velocity, its counsel, or its hired "experts" are direct and real.

In light of the above risks, no level of protection provided by a sensitive document review protocol can guarantee that nonparty Bosch's trade secrets will remain secure if produced. *See, e.g.*, *Beam Sys. v. Checkpoint Sys.*, No. 95-cv-4068, 1997 U.S. Dist. LEXIS 8812, at *8 (C.D. Cal. Feb. 10, 1997) (recognizing that the disclosure of trade secrets in litigation, even with the use of an appropriate protective order, "could become by indirection the means of ruining an honest and profitable enterprise") (citations omitted).

### 2. BOSCH HAS ALREADY PRODUCED AND OFFERED SUFFICIENT DISCOVERY TO NEGATE THE NEED FOR VELOCITY'S HIGHLY INVASIVE DISCOVERY REQUEST

The Court should limit discovery on nonparty Bosch because information Velocity seeks "is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Morrow*, 2006 WL 559288, at *1 (citing Fed. R. Civ. P. 26(b)(2)). Velocity

incorrectly asserts that it requires source code and technical documents because: (1) "due to the detailed nature of the Court's claim constructions, Velocity will need to review source code for the accused features to obtain the evidence it needs to prove its case" (D.I. 187 at 8); and (2) "Velocity has no way to access the information other than to seek it from Bosch under subpoena because Bosch has sole possession of the documents and source code" (*Id.* at 13). Velocity, however, does not articulate what "detailed nature" of the claim constructions supports its position, failing to show how Bosch's trade secrets can help Velocity prove its case. Velocity also fails to explain why the source code and documents are the <u>only things</u> that would suffice— thereby failing to establish necessity. Indeed, Velocity has not met its burden for establishing the need for highly sensitive materials that would compromise Bosch's trade secrets.

Bosch already produced the documents necessary for Velocity to evaluate its infringement theory, first on July 19, 2017, and again on August 10, mere hours after Velocity filed its premature motion. And, Bosch provided reasonable alternatives: a declaration and deposition, which are "more convenient, less burdensome, or less expensive" than providing Bosch's sensitive source code and documents. *See Morrow*, 2006 WL 559288, at *1. Velocity subpoenaed Bosch for depositions, yet <u>completely omitted</u> from its motion any mention of this alternative source of information. Instead, Velocity now demands invasive discovery and rejects reasonable alternatives. The documents Bosch already produced, as well as the offered declaration and deposition, are sufficient for Velocity to evaluate its claims against FCA.

### 3. BOSCH'S DOCUMENTS, OFFERED DECLARATION, AND OFFERED DEPOSITION ARE SUFFICIENT ALTERNATIVES IN VIEW OF THIS COURT'S CLAIM CONSTRUCTION ORDER

To date, Bosch has only received heavily redacted versions of Velocity's infringement contentions. Based on the non-redacted portions, Bosch understands that Velocity accuses the ACC and FCW functions with respect to claims 17, 60, and some dependent claims thereof, and

12

Velocity accuses the PA function with respect to claim 33. The Claim Construction Order construes terms of these claims narrowly, and Bosch is able to produce documents and alternative discovery demonstrating non-infringement, despite the heavily redacted infringement contentions.

Claims 17, 60, and their dependent claims each requires a memory subsystem that stores a "vehicle speed/stopping distance table." The Court strictly construed this term to mean "[a] table used to look-up the stopping distance for any given vehicle speed," rejecting Velocity's broader proposed construction of a "data structure for organizing vehicle speed and stopping distance information." (D.I. 114 at 21.) Bosch's source code does not contain a look-up table. (Ex. B ¶¶ 20-21). Bosch repeatedly offered a declaration and deposition testimony to that effect. But Velocity declined these offers and has summarily rejected documents that Bosch already produced, in blind pursuit of proprietary source code. Such a declaration and deposition testimony would conclusively show that Bosch's source code does not include a look-up table.

Claim 33 requires specific processor functions, such as: "upon the processor subsystem . . . determining said distance is less than a predetermined distance, the processor subsystem activates the vehicle proximity alarm circuit." Bosch again offered a declaration and deposition explaining why Bosch's source code does not include these functions. Velocity also declined Bosch's offer for this reasonable alternative.

On similar facts, the Southern District of California held that a nonparty was not required to produce its source code, a "highly confidential trade secret and one of [the nonparty's] most valuable assets." *Realtime Data, LLC*, 2012 WL 1905080, at *3. The nonparty offered a deposition of its engineer, if the patentee required further technical explanations of its products. *Id.* The court agreed that production of the nonparty's source code would constitute an undue

13

burden, and that its "concerns regarding the security of its source code, despite the protective order, cannot be ignored." *Id.* The court further agreed that the deposition would be "sufficient to inform [the patentee] regarding how [the nonparty's] products work[ed]." *Id.*

Similarly, in *Generac Power Systems*, the Eastern District of Wisconsin denied the patentee's motion to compel disclosure of the <u>defendant's</u> source code. 2012 WL 2049945, at *2. The defendant argued that full disclosure of the code, also used in many nonaccused products, is unnecessary. *Id.* In lieu of the full code, the defendant offered to provide a demonstration of the software at issue and to provide manuals. *Id.* The court noted that it would order full disclosure only if that there was <u>no other way</u> for the patentee to obtain the information sought. *Id.* But, in view of alternatives offered by the defendant, the court denied the patentee's motion. *Id.*

Here, nonparty Bosch already produced documents of the quality necessary for Velocity to evaluate its infringement theory, and Velocity has not explained why the documents are of insufficient quality, only complaining about their quantity. Velocity's arguments even fail to account for the second production made mere hours after Velocity filed its premature motion. Furthermore, Bosch has offered a declaration and deposition, alternative sources of information "that [are] more convenient, less burdensome, or less expensive." *See Morrow*, 2006 WL 559288, at *1. Velocity declined these offers without justification, moving to compel discovery through the most invasive means possible. Given Velocity's unreasonable rejection of appropriate alternatives, its motion should be denied.

**C.      IF THE COURT WERE TO GRANT VELOCITY'S IMPROPER MOTION, A SPECIAL MASTER SHOULD BE APPOINTED TO SAFEGUARD BOSCH'S TRADE SECRETS**

If the Court were to grant Velocity's improper motion, a neutral, Court-appointed special master should serve as the sole person who analyzes Bosch's confidential source code and

technical documents.[5] Such an arrangement should be subject to a new Protective Order between Velocity and Bosch, outlining the review and reporting procedures for the special master, as well as confidentiality designations for any declarations and depositions. *See RGIS, LLC v. A.S.T., Inc.*, No. 07-cv-10975, 2008 WL 186349, at *2-4 (E.D. Mich. Jan. 22, 2008) (granting the defendants' motion seeking a protective order and special master). Here, if the Court were to grant Velocity's motion, only the special master should analyze Bosch's source code and technical documents, and to the extent that they contain information that proves or disproves a claim element of the patent-in-suit being met, provide a report regarding said information.

## V.  CONCLUSION

Bosch is a nonparty to this case, yet Velocity seeks production of Bosch's trade secret source code and related documents beyond Bosch's two document productions, without ever explaining why the additional materials are <u>necessary</u> to Velocity's case. Velocity's demand imposes great danger and risk on the security of Bosch's highly-sensitive information, which is not sufficiently protected by the current Protective Order. In addition to Velocity's failure to justify such invasive discovery on a nonparty, Velocity has moved to compel enforcement of a subpoena in this Court, when the EDMI is the proper place of compliance, since the source code and the related documents at issue are stored in Plymouth. For at least these reasons, Bosch respectfully requests that the Court deny Velocity's Motion to Compel.

Respectfully submitted,

Dated: August 28, 2017

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue

---

[5] Given that Velocity has rejected, without explanation, less intrusive discovery, if the Court grants Velocity's motion and appoints a special master, the cost and expenses of the special master should be borne by Velocity. Bosch, as a non-party, should not be required further expense in Velocity's misplaced pursuit of Bosch's sensitive and highly valuable trade secrets.

FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
11955 Freedom Drive
Reston, VA 20190
Phone: (571) 203-2700
Fax:   (202) 408-4400

*ATTORNEY FOR NONPARTY*
*ROBERT BOSCH, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on August 28, 2017 by electronic filing to:

| | |
|---|---|
| **HAYNES AND BOONE, LLP**<br><br>James A. Shimota<br>180 N. LaSalle Street<br>Suite 2215<br>Chicago, IL 60601<br>(312) 216-1624<br>jim.shimota@haynesboone.com<br><br>***Counsel for Plaintiff Velocity Patent LLC*** | |
| **VENABLE LLP**<br><br>Frank C. Cimino, Jr.<br>Leslie A. Lee<br>575 7th Street NW<br>Washington, DC 20004<br>(202) 344-4569<br>(202) 344-4048<br>fccimino@venable.com<br>lalee@venable.com<br><br>***Counsel for Defendant FCA USA LLC*** | **SWANSON, MARTIN & BELL, LLP**<br><br>Joshua E. Bidzinski<br>P. Stephen Fardy<br>330 North Wabash, Suite 3300<br>Chicago, IL 60611<br>(312) 321-9100<br>sfardy@smbtrials.com<br>jbidzinski@smbtrials.com |

*/s/ Lionel M. Lavenue*
Lionel M. Lavenue
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

*ATTORNEY FOR NONPARTY*
*ROBERT BOSCH, LLC*

17