**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| VELOCITY PATENT LLC,<br><br>*Plaintiff,*<br>v.<br><br>FCA US LLC,<br><br>*Defendant.* | Civil Action No. 1:13-cv-08419<br><br>**REDACTED VERSION**<br><br>Judge Thomas M. Durkin<br>Magistrate Judge Michael T. Mason |

**DEFENDANT FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF MR. CARTER AND MR. IYER**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. MR. CARTER AND MR. IYER FAILED TO APPORTION FOR THE PATENTED INVENTION ..... 1

A. The Issues Surrounding FCA's Motion Are Not Factual Disputes ..... 1

B. Velocity Argues that Further Apportionment Is Not Necessary, But this is Contrary to Federal Circuit Law ..... 2

1. Velocity Cannot Distinguish *Realtime* ..... 5

2. Cases Discussing Apportionment to the Smallest Saleable Unit Do Not Support Velocity's Position ..... 6

C. Mr. Carter's *Georgia-Pacific* Analysis Does Not Remedy a Flawed Methodology ..... 8

D. Mr. Carter's Reliance on FCA Business Records Does Not Remedy His Flawed Methodology ..... 9

E. Mr. Iyer's Analysis is Flawed for the Same Reasons that Mr. Carter's Analysis is Flawed ..... 9

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astrazeneca AB v. Apotex Corp.*,
782 F.3d 1324, 1338 (Fed. Cir. 2015)....................2, 3, 4, 5

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)....................3, 5

*Garretson v. Clark*,
111 U.S. 120 (1884)....................3, 7

*Medicines Co. v. Mylan Inc.*,
No. 11-CV-1285, 2014 WL 1979360 (N.D. Ill. May 15, 2014)....................5

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017)....................3

*Realtime Data, LLC v. Oracle Am., Inc.*,
No. 6:16-cv-00088, 2017 U.S. Dist. LEXIS 99092 (E.D. Tex. July 28, 2016)..........5, 6, 8, 10

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
22 F. Supp. 3d 585 (E.D. Va. 2013)....................7

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)....................8

*Univ. of Pittsburgh of the Commonwealth Sys. of Higher Ed. v. Varian Med. Sys.*,
561 F. App'x 934 (Fed. Cir. 2014)....................5

*Virnetx, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)....................5

## I. INTRODUCTION

Neither Velocity nor its experts dispute that:

- they used the *concept* of a fuel efficiency notification as the basis for their damages analysis; and
- the *concept* of a fuel efficiency notification was known in the prior art long before the '781 patent.

Based on these two facts, and because the Supreme Court and the Federal Circuit require an expert to value only the "incremental benefit" that a patented invention provides over "conventional elements," Velocity's damages case must be struck. Its experts made no attempt to value the incremental benefit of the invention or to remove the value of conventional elements from their proposed royalty, and therefore no effort to value *the invention*. Instead of isolating and valuing the novel feature of its patent, Velocity's method values the part of the accused feature that is unequivocally not attributable to Velocity's patent—having a fuel economy light go on and off. The method they employed to determine damages, which valued the prior art and the conventional rather than the patented and the inventive, is therefore legally unsound and cannot withstand judicial scrutiny.

## II. MR. CARTER AND MR. IYER FAILED TO APPORTION FOR THE PATENTED INVENTION

### A. The Issues Surrounding FCA's Motion Are Not Factual Disputes

Velocity admits that its experts did not focus their damages analysis on the incremental benefit that the '781 patent provides over the prior art or conventional technology, and instead, valued the *concept* of a fuel efficiency notification as a whole. Opp. at 7, 12; *see also* Dkt. 410 at 7-8; Dkt. 410, Ex. 5 at 237:12-239:4 (Mr. Iyer admitting that he only valued "the notifications themselves or the fact of the notifications"); Dkt. 410, Ex. 2 at 66:17-69:21, 58:8-59:8 (Mr.

Carter admitting that he only valued "the profit attributable to the infringing features" as a whole and considered the "outward manifestation" of those notifications). But that concept is not novel. *See* Dkt. 410 at 8-9. None of those facts are in dispute.[1] Thus, it is not the case that "the parties do not agree as a factual matter where to draw that line in the accused products." Opp. at 12. Rather, through the deposition process, the record shows a lack of factual dispute on the two critical facts relevant to this motion—that the concept of a fuel efficiency notification was known, and that Velocity's experts' damages methodology valued only that known concept.

At best, Velocity contends the '781 patent improved the way that the system utilizes specific sensor inputs to generate a "fuel overinjection notification." *See* Dkt. 370 at 13-15; Ex. 1 at A[1], pp. 1, 3, 5-8. While FCA disputes whether this was inventive at the time (given the amount of prior art fuel efficiency notifications), Velocity's experts made no effort to value this alleged improvement, instead of the concept of providing the notification. Had Velocity attempted to value the way that the notification is generated, that approach may have created a factual dispute for the jury to decide. But Velocity's approach—which values the concept of including a fuel efficiency notification (not how it is generated)—is a purely *legal* question that the Federal Circuit has already resolved adversely to Velocity.

### B. Velocity Argues that Further Apportionment is Not Necessary, But this is Contrary to Federal Circuit Law

*Astrazeneca AB v. Apotex Corp.* holds that a "court *must* determine how to account for the relative value of the patentee's invention in comparison to the value of *conventional* elements recited in the claim, standing alone." 782 F.3d 1324, 1338 (Fed. Cir. 2015) (emphasis added)

[1] Velocity points to Patent Office reexamination proceedings as support for the novelty of the concept of the claimed "fuel overinjection notifications." But the Patent Office did not determine that fuel efficiency notifications themselves were novel. Nor could they, as Velocity's experts have conceded as much. *See* Dkt. 410 at 8-9.

(citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1233 (Fed. Cir. 2014) and *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).[2] Thus, where a fuel efficiency notification exists in the prior art, and the patentee's invention relates only to the specific inputs or algorithm used to activate that notification, it is improper to consider the value of the fuel efficiency notification as a whole in the damages analysis. Velocity disagrees with FCA's reading of *Astrazeneca*, arguing that "the Federal Circuit . . . rejected defendant's arguments [regarding apportioning for incremental benefit], and affirmed the damages award" below. Opp. at 6. Velocity misinterprets *Astrazeneca*'s holding.

*Astrazeneca* involved pharmaceutical formulations containing omeprazole, a specific active ingredient in the drug Prilosec. *Astrazeneca*, 782 F.3d at 1328. Omeprazole was already known in the prior art, but the patented formulation added a subcoating that solved several problems with prior formulations of the drug. *Id.* at 1328-29. In appealing the damages award, the defendant there did argue that "the district court should have calculated damages by apportioning the relative contribution of value between the active ingredient and the 'inventive element' of the patents, i.e., the subcoating." *Id.* at 1339-40. The Federal Circuit rejected the defendant's argument, but *not* because it rejected the notion that damages must be apportioned to the patented improvement. Rather, the Court there found clear evidence that the patented subcoating created a "new" drug that "was previously unknown in the art and was novel in its own right." *Id.* at 1340. Thus, the Court ruled that the district court did not abuse its discretion in finding that the patented improvement "substantially created the value of the entire

[2] While *Garretson* relates to a lost profits damages analysis not at issue here, its mandate for apportioning to the incremental benefit still applies. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287 (Fed. Cir. 2017) ("apportionment is an important component of damages law generally, and we believe it is necessary in both reasonable royalty and lost profits analysis") (citing *Garretson*, 111 U.S. at 120–21).

omeprazole product," such that there was "no reason to exclude the value of the active ingredient when calculating damages in the case." *Id.* at 1339-40. Put another way, although the chemical structure of the active ingredient was known, the Court found that the subcoating so fundamentally changed the behavior of the ingredient, that it was as though the ingredient itself was new, and thus, the drug as a whole had no conventional component to subtract. *Id.*

No such finding is possible in this case. Velocity's experts have not suggested, much less rendered an opinion that the improvement of the '781 patent over the prior art fuel efficiency notifications "is so important to the viability . . . that it was substantially responsible for the value of the product." *Id.* at 1339. Conclusory statements that the '781 patent provides the "core functionality" for a fuel efficiency notification are insufficient (Opp. at 7) – Velocity's experts do nothing to consider the *improvement* claimed in the '781 patent.[3] At deposition, they were unable to identify *any* benefit of the patented invention that was not possible in then-existing fuel efficiency notifications (prior art notifications). *See, e.g.* Dkt. 410, Ex. 5 at 236:8-238:4 (customers "wouldn't understand, you know, those equations to begin with"); *see also* Dkt. 410, Ex. 2 at 90:1-91:12. Rather, they applied the wrong methodology by valuing the fuel efficiency notification concept as a whole, even while admitting that the concept as a whole was already known (and thus could not be a benefit provided by the '781 patent).[4] Having failed to provide

[3] In opining that the core functionality of the accused notifications related to the '781 patent, Mr. Carter was comparing the scope of the claim to the accused features, without considering whether features were conventional. *See* Dkt. 410, Ex. 2 at 71:7-76:21. He was thus considering what would be required to implement a fuel efficiency notification (i.e. to add a notification to a car not having one). *Id.* Even there he admitted [redacted] *Id.* at 76:12-21. Mr. Carter provided no analysis of the incremental benefit of the patented invention, which should have quantified the added value of the '781 patented notification over known notifications.

[4] Velocity's suggestion that *Astrazeneca* is less relevant because it related to an appeal from a final judgment, and not a *Daubert* motion, misses the point. Opp. at 6. The Federal Circuit outlined the legal requirements for a proper damages analysis, which does not change whether

any analysis of the value of the '781 patent's incremental improvement, Mr. Carter's analysis is simply not helpful to the jury, which must "guard against application of an unduly high royalty rate . . . so as not to award [Velocity] for what it did not invent." *Univ. of Pittsburgh of the Commonwealth Sys. of Higher Ed. v. Varian Med. Sys.*, 561 F. App'x 934, 947-50 (Fed. Cir. 2014) (affirming damages award where expert provided testimony that "patented improvement increased the overall value of [the product] by a certain percentage (i.e. 3%)"). By ignoring how the "patented improvement increased the overall value" of known fuel economy notifications, Velocity's experts have applied a legally-flawed methodology. *See id.*; *Astrazeneca*, 782 F.3d at 1338; *Ericsson Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). This court should "exercise[] its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment [are] allowed to reach the jury." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014).

**1. Velocity Cannot Distinguish *Realtime***

Velocity's attempts to distinguish *Realtime Data, LLC v. Oracle Am., Inc.* fare no better. No. 6:16-cv-00088, 2017 U.S. Dist. LEXIS 99092 (E.D. Tex. July 28, 2016). There, the District Court agreed that Federal Circuit precedent demands that "the incremental benefit created by the invention [] dictate[] the appropriate damages ultimately associated with a patent claim." *Id.* at *17-18 (citing *Astrazeneca*, 782 F.3d at 1339; *University of Pittsburgh*, 561 F. App'x at 947-50). The "incremental benefit" of the patent at issue in *Realtime* was ***the combination*** of two known

analyzing the method before or after a trial. If anything, the procedure of the case favored inclusion of the evidence because it involved a bench trial, where there is minimal risk of prejudicing the fact finder with an improper methodology, s*ee Medicines Co. v. Mylan Inc.*, No. 11-CV-1285, 2014 WL 1979360, at *5 (N.D. Ill. May 15, 2014), and the Court was reviewing the district court's decision with a highly deferential standard of review. *Astrazeneca*, 782 F.3d at 1333.

compression techniques. *Id.* at *15-16. But the expert's analysis included conventional aspects of the accused product, including "the use of a single form of compression standing alone." *Id.* at *19. The court therefore excluded the expert's apportionment testimony because his methodology "fails to adequately account for the benefit of ***the combination*** of the two [conventional elements] of the accused products." *Id.* at *19 (emphasis added). Velocity's experts have admittedly done the same.

Velocity argues that *Realtime* is irrelevant because the expert used a methodology different from Mr. Carter's. Opp. at 11. But the expert's methodology was not excluded because he "assumed an equal value for all features," as Velocity asserts. *Id.* The court noted its concern with the expert's "equal value" analysis, but "given that the Court finds it appropriate to strike [the] apportionment analysis altogether, the equal weighing of features in that analysis is no longer an issue." *Realtime* at *19 n.2. The Court's exclusion was based on the fact that the expert failed to "take into account the incremental benefit conferred"—exactly what Mr. Carter did here. *Id.* at *17.[5]

### 2. Cases Discussing Apportionment to the Smallest Saleable Unit Do Not Support Velocity's Position

While Velocity is correct that much Federal Circuit jurisprudence focuses on apportioning to the "smallest saleable unit," this does not mean that apportioning to the smallest saleable unit is sufficient, as Velocity alleges. Opp. at 7-8. Where that smallest saleable unit

[5] Velocity also attempts to dismiss *Realtime* because the excluded expert was a technical expert. Opp. at 11. But the damages witness relied entirely on the technical expert's apportionment analysis to calculate damages. *Realtime*, 2017 U.S. Dist. LEXIS 187717, at *7. Thus, the *Realtime* Court noted that the technical expert's opinions about the technology may be an input for the damages expert's apportionment opinion, but that the damages expert "cannot simply rely on the technical value [the technical expert] ascribes to the infringing features." *Id.* at *15. The Court also explicitly disapproved of the expert's methodology for failing to account for "the incremental benefit created by the invention." *Id.* at *18.

captures or includes conventional elements, the proper methodology must do more.

Velocity argues that the use of a whole "feature" or "component" is sufficient because that is the terminology the Courts have used in describing apportionment. Opp. at 8-10. But those courts were using "features" to describe the "inventive element." For example, in *Garretson v. Clark*, the Supreme Court affirmed vacating a damages award where the patentee based its damages analysis on the value of an entire mop, where the "inventive element" of the patent was the novel combination of a nut and collar in the mop head. 111 U.S. at 121. The court determined that a proper damages analysis must be apportioned down to the improvement resulting from that combination. *Id.* Similarly, in *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, the asserted claim was broadly directed to a multi-blade lawn mower, but the "inventive element" was an improved control baffle within the mower. 879 F.3d 1332, 1348 (Fed. Cir. 2018). The Federal Circuit upheld the jury's damages award where the methodology apportioned for the value of the improved baffles.[6] *Id.*

It is simply not the case that because "Mr. Carter apportioned," or relied only on one feature, that his methodology is necessarily sound. Opp. at 7. As one district court explained, "[i]n order to determine the revenue actually attributable to . . . the invention, [the expert] needed to apportion further" beyond the smallest saleable unit. *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 22 F. Supp. 3d 585, 594 (E.D. Va. 2013) ("the smallest salable infringing unit must be the starting point for the royalty base, but the Federal Circuit has not held that no further apportionment is ever necessary once the smallest salable unit is determined."). Velocity has identified no case to support its position that apportionment to the "inventive element" is not

---

[6] In *Exmark*, the expert used the revenue of the whole mower, but then accounted for apportionment in the royalty rate. 879 F.3d at 1349. Here, there was no rate adjustment. Velocity's experts used the unapportioned value and then split the profits. *See* Dkt. 410 at 4-5.

required. The Federal Circuit's mandate in *Astrazenca*—which requires apportionment to "unconventional elements"—defines the basic reliability standard for damage methodologies in patent cases. Velocity's method fails this basic standard.

### C. Mr. Carter's *Georgia-Pacific* Analysis Does Not Remedy a Flawed Methodology

Mr. Carter's analysis of *Georgia-Pacific* Factors 9 and 10 cannot save his flawed methodology. Had Mr. Carter provided substantive *Georgia-Pacific* analysis, it would "nevertheless [have] result[ed] in a fundamentally flawed conclusion." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (rejecting "beginning from a fundamentally flawed premise and adjusting it based on legitimate [*Georgia-Pacific*] considerations"). As the court explained in *Realtime*, Velocity "cannot simply point to Mr. [Carter's] *Georgia-Pacific* analysis and argue that any shortcomings with [his] apportionment methodology can be resolved there." 2017 U.S. Dist. LEXIS 187717, at *19.

And though Mr. Carter's analysis of these factors recognizes that "notifications existed" that "advised the operator of the vehicle when to take certain actions for the purpose of fuel economy," he never considers these prior art notifications in concluding that Factors 9 and 10 would have negatively impacted FCA's bargaining position. Dkt. 410, Ex. 1 at 79-81; *see also* Dkt. 410, Ex. 2 at 87:1-90:19 (Mr. Carter explaining he did not feel he had to consider prior art because he did not recognize that FCA cited it as a potential non-infringing alternative). Mr. Carter did not substantively analyze "the utility and advantages of the patent property over old modes or devices," he simply concluded that he did not need to consider older modes. *Id.* at 96:20-97:4; 98:12-99:3; 100:7-103:3; 106:18-107:8. Thus, there is nothing in his Factor 9 and 10 analysis to salvage his flawed methodology.

### D. Mr. Carter's Reliance on FCA Business Records Does Not Remedy His Flawed Methodology

Velocity further seeks to legitimize Mr. Carter's analysis by arguing that he relied on methods utilized by FCA in its regular business. Opp. at 4, 15. For instance, Mr. Carter [redacted][7]

Nor does Mr. Iyer's [redacted] rectify his failure to account for the incremental benefit of the '781 patent. Because Mr. Iyer's methodology is legally flawed—by seeking to value the notification itself, and not the manner in which it is generated—[redacted]

### E. Mr. Iyer's Analysis is Flawed for the Same Reasons that Mr. Carter's Analysis is Flawed

Finally, FCA does raise a challenge to Mr. Iyer's "methodology" and "application to the facts of this case." Just like Mr. Carter, Mr. Iyer applied the wrong methodology in attempting to value the whole concept of a fuel efficiency notification. *See* Dkt. 410 at 7-8, 10-13. He admits that he only asked the survey respondents about "the notifications themselves or the fact

[7] [redacted]

of the notifications," and did not ask them about the specific formula or inputs that would activate the notification. *Supra* Section II.A.; Dkt. 410 at 7-8. By failing to apportion his analysis to the incremental benefit of the '781 patent, Mr. Iyer similarly applied the wrong methodology. *See Realtime*, 2017 U.S. Dist. LEXIS 187717, at *15. His analysis is therefore unhelpful to the jury and should be excluded.

## III. CONCLUSION

For the foregoing reasons, FCA's *Daubert* motion should be granted, and the testimony of Mr. Carter and Mr. Iyer excluded.

Dated: July 30, 2018

Respectfully submitted,

*/s/ Frank C. Cimino, Jr.*

Frank C. Cimino, Jr.
Megan S, Woodworth
Jeffri A. Kaminski
Jonathan L. Falkler
Leslie A. Lee
**VENABLE LLP**
600 Massachusetts Ave NW
Washington, DC 20004
(202) 344-4569
(202) 344-4048
*fccimino@venable.com*
*jakaminski@venable.com*

P. Stephen Fardy
Brian W. Bell
Jonna M. Reilly
**SWANSON, MARTIN & BELL, LLP**
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
*sfardy@smbtrials.com*
*bbell@smbtrials.com*
*jreilly@smbtrials.com*

***Attorneys for Defendant FCA US LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on this 30th day of July, 2018 via the Court's CM/ECF system and electronic mail on all counsel of record.

*/s/ Frank C. Cimino, Jr.*
Frank C. Cimino, Jr.