**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| VELOCITY PATENT LLC,<br><br>*Plaintiff,*<br>v.<br><br>FCA US LLC,<br><br>*Defendant.* | Civil Action No. 1:13-cv-08419<br><br>Judge Thomas M. Durkin<br>Magistrate Judge Michael T. Mason |

**DEFENDANT FCA US LLC'S MOTIONS *IN LIMINE* NOS. 1-7**
**TO EXCLUDE EVIDENCE AND TESTIMONY FROM PLAINTIFF**

## TABLE OF CONTENTS

**Page**


I. MOTION IN LIMINE NO. 1 – PRIOR POST-GRANT PROCEEDINGS AND HEIGHTENED BURDEN OF PROOF ........ 1

II. MOTION IN LIMINE NO. 2 – DEFENDANT'S OVERALL WORTH OR REVENUES AND PROFITS ........ 4

III. MOTION IN LIMINE NO. 3 – EVIDENCE THAT GOES BEYOND THE ACCUSED FUNCTIONALITY AND ARE NOT ASSOCIATED WITH THE USE OF THE CLAIMED NOTIFICATIONS ........ 6

IV. MOTION IN LIMINE NO. 4 – EVIDENCE REGARDING FCA'S ACTIONS IN RESPONSE TO LITIGATION IN SUPPORT OF WILLFULNESS CLAIM ........ 7

V. MOTION IN LIMINE NO. 5 – DISCOVERY DISPUTES OR ALLEGED DEFICIENCIES ........ 10

VI. MOTION IN LIMINE NO. 6 – DR. MARTENS' REVIEW OF BOSCH SOURCE CODE MATERIALS ........ 12

VII. MOTION IN LIMINE NO. 7 –DECLARATIONS OF DR. KAY STEPPER ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams Labs., Inc. v. Jacobs Engineering Co.*,
761 F.2d 1218 (7th Cir. 1985) ....5

*Allergan, Inc. v. Apotex Inc.*,
754 F.3d 952 (Fed. Cir. 2014)....2

*Amsted Indus. Inc. v. National Casting, Inc.*,
No. 88-cv-924, 1900 WL 106548 (N.D. Ill. July 11, 1990) ....10

*Bayer AG v. Schein Pharm., Inc.*,
129 F. Supp. 2d 705 (D.N.J. 2001) ....2

*Central Die Casting & Mfg. Co. v. Tokheim Corp.*,
No. 93-7692, 1998 WL 812558 (N.D. Ill. Nov. 19, 1998) ....5

*Chicago Import, Inc. v. Am. States Ins. Co.*,
No. 09 CV 2885, 2016 WL 4366494 (N.D. Ill. Aug. 16, 2016) ....11

*Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*,
No. 2:15-CV-1202, 2017 WL 959592 (E.D. Tex. Mar. 13, 2017) (Bryson, J.) ....3

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)....2

*Finjan, Inc. v. Sophos, Inc.*,
No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 189272 (N.D. Cal. Aug. 22, 2016) ....3

*Fromson v. Advance Offset Plate, Inc.*,
755 F.2d 1549 (Fed. Cir. 1985)....2

*Fromson v. Western Litho Plate & Supply Co.*,
853 F.2d 1568 (Fed. Cir. 1988)....10

*Gomez v. City of Chicago*,
No. 13 C 05303, 2015 WL 13651138 (N.D. Ill. June 29, 2015) ....11

*Interdigital Commc'n Inc. v. Nokia Corporation*,
No. 13–10–RGA, 2014 WL 8104167 (D. Del. Sept. 19, 2014)....3, 4

*In re James Wilson Assocs.*,
965 F.2d 160 (7th Cir. 1992) ....13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)....................................................................................4, 6

*Loggerhead Tools, LLC v. Sears Holdings Corp.*,
No. 12-cv-9033, 2017 WL 4161976 (N.D. Ill. April 11, 2017).............................................10

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
No. 14-CV-1296-JPS, 2017 U.S. Dist. LEXIS 168504 (E.D. Wis. October 12, 2017) ...........................................................................................................3, 4

*Quantum Corp. v. Tandon Corp.*,
940 F.2d 642 (Fed. Cir. 1991)..........................................................................................9

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
719 F.3d 1305 (Fed. Cir. 2013).......................................................................................10

*Sciele Pharma Inc. v. Lupin Ltd.*,
684 F.3d 1253 (Fed. Cir. 2012).........................................................................................2

*Stragapede v. City of Evanston*,
No. 12 C 08879, 2016 WL 278854 (N.D. Ill. Jan. 22, 2016) ................................................11

*Tesco Corp. v. Weatherford Int'l, Inc.*,
750 F. Supp. 2d 780 (S.D. Tex. 2010) ...............................................................................4

*U.S. v. Smith*,
No. 13 CR 00863, 2014 WL 12660536 (N.D. Ill. June 23, 2014)..........................................11

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)....................................................................................5, 7

*Wis. Alumni Research Found. v. Apple, Inc.*,
135 F. Supp. 3d 865 (W.D. Wis. 2015) ..............................................................................3

**Other Authorities**

Fed. R. Evid. 402 ................................................................................................ *passim*

Fed. R. Evid. 402 ................................................................................................ *passim*

Fed. R. Evid. 703 ............................................................................................13, 14

Fed. R. Evid. 801 ..................................................................................................13

Fed. R. Evid. 803 ..................................................................................................13

## I. MOTION IN LIMINE NO. 1 – PRIOR POST-GRANT PROCEEDINGS AND HEIGHTENED BURDEN OF PROOF

### A. Post-Grant Proceedings are Not Probative of FCA's Validity Defenses

FCA US LLC ("FCA") moves to preclude Velocity Patent LLC ("Velocity") from presenting evidence and testimony regarding third-party post-grant proceedings relating to the '781 patent under Fed. R. Evid. 402 and 403. Between 2014 and 2017, Volkswagen, Mercedes and Unified Patents filed requests for Patent Office review of some of the claims of the '781 patent. *See, e.g.* Dkt. 351 at ¶¶ 6, 12. Each of those post-grant proceedings has concluded.

Evidence concerning the Patent Office proceedings are not relevant to FCA's case because FCA was not a party to them and FCA asserts different invalidity positions than those before the Patent Office.[1] For the same reasons, the proceedings also are not relevant to the issue of willful infringement, which concerns only FCA's subjective view and actions, and not that of other defendants. Thus, the post-grant proceedings are not probative of FCA's validity defenses or state of mind.

### B. Admission of the Post-Grant Proceedings and Any Suggestion of a Heightened Burden would be Unduly Prejudicial

Discussion of the post-grant proceedings would be prejudicial because it would suggest, as Velocity has previously, that the '781 patent has been deemed invulnerable to validity challenges. For example, Velocity has repeatedly suggested that "FCA has the heavy burden to prove . . . that the Examiner was wrong." Dkt. 370 at 2; *see also* Ex. 1 at 103:1-8 (Velocity's expert explaining "The inventive concept here, you know, can't do better I think than say it's captured in the claims and that PTAB, the examiner all found those to be inventive. So I believe

[1] None of the specific obviousness combinations that FCA asserts in this litigation were at issue in any of the prior post-grant proceedings.

that the claims are what's inventive here."); Ex. 2 at 107:23-108:2 (Velocity questioning FCA's expert "Well, do you think that . . . the examiner who had Weber at the time got it wrong?"), 30:21-31:11.

The law is clear that the "clear and convincing" standard for proving a patent invalid after post-issuance proceedings is *no heavier* than that of challenging any other patent. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1555 (Fed. Cir. 1985) ("[T]he presumption [of validity], like all legal presumptions, is static – that is, it can neither be strengthened or destroyed. . . . The Examiner's decision, on an original or reissue application, is never binding on a court."); *Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705, 714 (D.N.J. 2001); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988) (there is "nothing untoward about the PTO upholding the validity of a reexamined patent which the district court later finds invalid."); *see also Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014) (citing *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259-61 (Fed. Cir. 2012)) ("The standard of proof does not rise and fall with the facts of each case. In particular, whether a reference was previously considered by the PTO, the burden of proof is the same: clear and convincing evidence of invalidity.").

It would therefore be prejudicial to allow Velocity to present evidence regarding the post-grant proceedings, in an effort to convey that "the Examiner is owed deference as a result of having special patent expertise." Dkt. 370 at 2. As the Federal Circuit has explained, there is no additional burden placed on defendants beyond "clear and convincing evidence":

> As the Supreme Court explained in *i4i*, there is no heightened burden of proof when a reference was previously considered by the PTO, and no lowered burden of proof if a defendant raises a new reference or argument during litigation. *Id.* The burden does not suddenly change to something higher—"extremely clear and convincing evidence" or "crystal clear and convincing evidence"— simply because the prior art references were considered by the PTO. In short, there is no heightened or added burden that applies to invalidity defenses that are based upon

> references that were before the Patent Office. The burden is always the same, clear and convincing evidence.

*Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012).[2] Because FCA's invalidity positions *were not* presented by the parties that challenged the '781 patent during these post-grant proceedings, Velocity and its expert's suggestion that validity has already been decided by the Patent Office Examiner would mislead the jury.

District courts have precluded evidence of concluded post-grant proceedings because of the great danger that the jury will simply rely on the determinations of the Patent Office or that the defendants will have to waste significant time putting the reexaminations into context. *See Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 U.S. Dist. LEXIS 189272, at *46 (N.D. Cal. Aug. 22, 2016) ("I believe it would take a significant amount of time and effort to adequately explain the relevance and limitations of the PTO proceedings to the jury and because I believe there is a substantial risk that the jury will improperly substitute its own judgment for the PTO decisions"); *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, No. 14-CV-1296-JPS, 2017 U.S. Dist. LEXIS 168504, at *14 (E.D. Wis. October 12, 2017) (precluding evidence of concluded IPR "will be a waste of time that will confuse the jury as to the standards applicable in this case and mislead them into unnecessarily deferring to the PTAB on validity matters."); *see also Interdigital Commc'n Inc. v. Nokia Corporation*, No. 13–10–RGA, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014) (excluding evidence of IPR denial due to risk of confusion to the

---

[2] Similar to the use of the term "presumption of validity," Velocity's arguments about a "heightened burden" add little to the jury's understanding of the "clear and convincing" burden of proof, and would confuse the jury. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, No. 2:15-CV-1202, 2017 WL 959592, at *6 (E.D. Tex. Mar. 13, 2017) (Bryson, J.) (excluding use of the phrase 'presumption of validity' because it "would add little to the jury's understanding of the burden of proof on the validity issues" and "might be confusing to the jury, to the extent that the jury is required to consider both that phrase and the Court's instructions on the burden of proof.").

jury);[3] *see Wis. Alumni Research Found. v. Apple, Inc.*, 135 F. Supp. 3d 865, 874-75 (W.D. Wis. 2015) ("[T]here is a great risk that the jury would conclude, incorrectly, that the Patent Office has twice held the [patent-in-suit] is nonobvious over prior art. Such a conclusion would likely unfairly prejudice the jury against Apple before being asked to decide the same question."); *Tesco Corp. v. Weatherford Int'l, Inc.*, 750 F. Supp. 2d 780, 794 (S.D. Tex. 2010) (excluding evidence of a reexamination interim determination given the "serious risk that a jury would view the examiners as expert and authoritative").

Introducing any evidence of the post-grant proceedings, or suggesting a heightened burden or standard of establishing invalidity would mislead the jury into thinking that the '781 patent is less vulnerable to invalidity challenges. *See Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, No. 14-CV-1296-JPS, 2017 U.S. Dist. LEXIS 168504, at *14 (E.D. Wis. October 12, 2017) ("admitting evidence of the IPRs is likely to mislead the jury into believing that because the patents-in-suit have survived many attacks, they must be valid against the present attacks."). The prejudicial nature of this argument and evidence therefore greatly outweighs any claimed relevance it may have to this case and therefore should be excluded.

## II. MOTION IN LIMINE NO. 2 – DEFENDANT'S OVERALL WORTH OR REVENUES AND PROFITS

FCA moves to preclude Velocity from offering evidence, argument or reference to FCA's size, wealth, total revenues or profits, including FCA's cash reserves or its ability to pay damages or for a license under Fed. R. Evid. 402 and 403. Any such evidence would not be tied to any aspect of the accused products and therefore would have the significant potential to improperly skew the damages analysis. "Admission of . . . overall revenues, which have no

[3] The court in *Interdigital Commc'n Inc. v. Nokia Corp.* also noted that, like here, "the Defendants were not a party to the IPR." 2014 U.S. Dist. LEXIS 182856, at *3.

demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculations beyond that which is adequate to compensate for the infringement." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) (internal quotations omitted); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319-21 (Fed. Cir. 2011).

Velocity's damages expert discusses FCA's total revenues and total vehicle sales at length. Ex. 3 at 7-10 (describing various values of prior ownership interests and providing a "summary of Chrysler Group/FCA Financials"), Exhibits 8.1, 8.3, 8.4, 8.6-8.12, 9.0-9.3, 10.0. Introducing the value of the company or the total revenues or profits associated with FCA improperly seeks to skew the jury's perspective on damages, and to seek the jury's sympathy as a "David" to Defendant's "Goliath." Such evidence or argument is routinely excluded under Fed. R. Evid. 402 or 403. *See Adams Labs., Inc. v. Jacobs Engineering Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985) ("Courts have held that appealing to the sympathy of jurors through references to the relative wealth of the defendants in contrast to the relative poverty of the plaintiffs is improper and may be cause for reversal. . . . If the wealth and size of a corporation are not at issue, counsel is bound to refrain from making reference to such size and wealth, or bear the risk of an unfavorable appellate reception."); *Central Die Casting & Mfg. Co. v. Tokheim Corp.*, No. 93-7692, 1998 WL 812558 (N.D. Ill. Nov. 19, 1998) (recommending granting motion *in limine* to exclude evidence of "the wealth or pecuniary circumstances of the Defendant as such is irrelevant, immaterial, and unduly prejudicial").

Furthermore, Velocity's damages expert relies on public information relating to the 2009 purchase of Chrysler Group LLC by Fiat S.p.A. in order to form FCA US LLC. Ex. 3 at 10.

Without any nexus between this purchase and the patented invention, the information is untethered to the footprint of the patent in the market, and will mislead the jury. While the fact of FCA's ownership may be appropriate, any evidence regarding the value of the company as a whole should be precluded under Fed. R. Evid. 402 and 403.[4]

## III. MOTION IN LIMINE NO. 3 – EVIDENCE THAT GOES BEYOND THE ACCUSED FUNCTIONALITY AND ARE NOT ASSOCIATED WITH THE USE OF THE CLAIMED NOTIFICATIONS

FCA moves to preclude Velocity from offering any evidence, opinion, or argument regarding (1) the revenue or profit associated with FCA vehicles as a whole or (2) broadly reflecting the automotive industry economy or priorities that are not associated with use of the accused notifications. Any such evidence or argument is irrelevant under Fed. R. Evid. 402 and unfairly prejudicial under Fed. R. Evid. 403.

The accused notifications are one of thousands of components within an FCA vehicle. Allowing Velocity to present evidence of the revenue or profits for whole vehicles without a nexus to the accused notifications would grossly misrepresent economic value of the accused notifications and confuse the jury. When untethered to the accused notifications, financial information about FCA's whole vehicles lacks relevance under Fed. R. Evid. 402 and would be highly prejudicial and misleading under Fed. R. Evid. 403.[5] Indeed, Velocity itself has confirmed the lack of relevance of these financial data points, explaining that its expert's "royalty is not calculated using revenue from the entire vehicle." Dkt. 427 at 3.

---

[4] Nor is evidence of the Fiat purchase relevant to any willful infringement claim. Velocity accuses FCA US LLC and its predecessor Chrysler Group LLC of willful infringement, *not* Fiat S.p.A. Dkt. 185 at p. 11; ¶ 22.

[5] The entire market value rule mandates that such financial information –such as overall product revenues or profits—is not admissible unless the patentee can demonstrate that "the demand for the entire product is attributable to the patented feature," *e.g.*, *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d at 67-68, a feat that Velocity has not attempted to accomplish.

Likewise, Velocity's damages expert relies on public information relating to the percentage of the overall gross domestic product that the auto industry in general has contributed to the U.S. economy, without establishing a nexus between the success or strength of the auto industry and the patented invention. Ex. 3 at 11. Velocity's expert also points to evidence that general concepts like "value," "safety," and "fuel efficiency" are increasingly becoming "important features of automobiles," without establishing a nexus between those general concepts and the patented invention. Ex. 3 at 12-18. Without that nexus, any information about general auto industry trends is untethered to the footprint of the patent in the market, and will mislead the jury.

In similar circumstances, the Federal Circuit has warned of "the danger of admitting" information that "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). Even with cross-examination and proper jury instructions, Defendant cannot put the proverbial cat (i.e., the large revenue figures) "back into the bag" if Plaintiff is permitted to reference these figures improperly before the jury. *Id*. Any such evidence would be highly prejudicial, and therefore should be precluded under Fed. R. Evid. 402 and 403.

## IV. MOTION IN LIMINE NO. 4 – EVIDENCE REGARDING FCA'S ACTIONS IN RESPONSE TO LITIGATION IN SUPPORT OF WILLFULNESS CLAIM

FCA moves to preclude Velocity from introducing, in support of its willful infringement claims, evidence or testimony of FCA's post-complaint investigation. Velocity did not originally accuse FCA of willful infringement, presenting its willful infringement claim for the first time nearly four years after filing its complaint, after the '781 patent had expired and a year after the Supreme Court changed the willful infringement standard in its *Halo* decision. Dkt. 155 at 1-3.

FCA opposed this amendment, urging that it would be prejudiced from Velocity's prolonged delay. *Id.* at 3-5. The Court permitted the amendment, but made special note of potential prejudice to FCA, stating:

> If the late filing of this amendment causes unavoidable trial prejudice to the defendant, appropriate motions *in limine* can be filed, and limiting instructions to the jury may be given.

Dkt. 184 at 1. As described below, FCA will suffer unavoidable trial prejudice as a result of the late amendment. Without the Court's assistance, the substantial prejudice to FCA may result in a manifest injustice at trial.

Because of Velocity's late amendment, the primary defense to a charge of willful infringement (the reliance on advice of counsel) has been entirely foreclosed to FCA. Dkt. 175 at 2. It is undisputed that FCA did not know about the '781 patent prior to this litigation. Because Velocity's original filing did not allege willful infringement, there was no need for FCA to hire separate patent counsel to render an opinion to defend against willfulness. Similarly, there was no need for in-house counsel to conduct its internal investigation of the merits of the suit in a way that separated investigative efforts and in-house opinions from privileged information regarding the litigation. Accordingly, FCA hired litigation counsel and its in-house counsel worked hand-in-hand with litigation counsel to investigate the allegations and conclude they were without merit. Ex. 4 at ¶¶ 4-6.

An opinion of counsel from either independent or in-house counsel would have either foreclosed the willfulness allegations or provided a significant and proper counterpoint to the jury regarding FCA's subjective view of the case. Because of Velocity's delay, FCA's opportunity to mount such a defense has been lost through no fault of FCA. Velocity was permitted full discovery on its willful infringement claim (including a deposition of FCA's in-house counsel), but discovery did not reveal any "pirate" like behavior to support the claim.

Neither FCA's legal or engineering teams knew about the '781 patent prior to litigation; instead, all of the accused technology was developed independently and completely before FCA had seen the patent. Ex. 4 at ¶ 9.

In opposing judgment of no willful infringement, Velocity focused almost exclusively on alleged deficiencies with FCA's post-filing investigation. Dkt. 379 at 24-25. Should Velocity be permitted to introduce such arguments regarding FCA's post-complaint investigation into Velocity's claims at trial, FCA cannot respond fully without waiving privilege as its litigation counsel was a direct part of that investigation. The severe prejudice caused by Velocity's delay—the foreclosure of a defense—warrants exclusion of any evidence or testimony regarding FCA's investigation in support of Velocity's willful infringement claim.[6] As the Federal Circuit has previously observed: "[a defendant] should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found." *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643 (Fed. Cir. 1991).

This prohibition would include calling FCA's in-house counsel, Mr. Jeremy Klobucar, (either live or via video deposition) to testify. Indeed, the prejudice would be magnified if Mr. Klobucar was questioned about FCA's investigation, because the privilege objections (which were plentiful during his deposition) will pique the jury's interest and naturally make them suspicious that FCA is trying to hide something. That unfair impression could taint the whole trial. The prohibition would also include refraining from eliciting facts or testimony regarding

[6] FCA would not oppose Velocity making a proffer to the Court outside of the presence of the jury of evidence and testimony regarding FCA's post-complaint investigation, for purposes of the Court's consideration of appropriate post-trial motions.

FCA's activity (or inactivity) prior to the filing of the amended complaint, and from arguing or suggesting that FCA did not conduct an investigation or form an opinion that the case lacked merit.

To prevent this manifest trial prejudice on infringement issues, FCA would consider a bifurcated proceeding on willful infringement after the liability portion of the trial is completed (assuming Velocity obtains a favorable verdict). Bifurcation will allow the jury to first "make threshold determinations on such matters as [infringement] and validity." *Amsted Indus. Inc. v. National Casting, Inc.*, No. 88-cv-924, 1900 WL 106548, at *2 (N.D. Ill. July 11, 1990); *see also Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1319 (Fed. Cir. 2013) ("we wish to make clear that district courts, in their discretion, may bifurcate willfulness and damages issues from liability issues in any given case" due to concerns regarding prejudicial evidence). The Federal Circuit has acknowledged that a bifurcated "approach may be useful in meeting the attorney-client privilege problem," *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1572, (Fed. Cir. 1988), and other courts in this district has followed this procedural framework, bifurcating the issue of willfulness from the original liability issues. *Loggerhead Tools, LLC v. Sears Holdings Corp.*, No. 12-cv-9033, 2017 WL 4161976, at *1 (N.D. Ill. April 11, 2017); *Amsted*, 1900 WL 106548, at *2. FCA also would consider working with the Court and Velocity on a set of stipulated, objective facts relevant to willfulness that the jury can use in their deliberations.

## V. MOTION IN LIMINE NO. 5 – DISCOVERY DISPUTES OR ALLEGED DEFICIENCIES

FCA moves to preclude Velocity from offering any evidence, argument, testimony or reference to discovery disputes or alleged discovery deficiencies. The fact discovery period closed on December 28, 2017, thus, to the extent Velocity had any issue with discovery, it should

have presented it to the Court and it need not be considered by the jury. Velocity has relied on discovery related issues to justify the insufficiency of its evidence on infringement issues, among others. *See* Ex. 6 at ¶¶ 587-88, 618 (Velocity's expert justifying lack of evidence on infringement of Fiat Eco Index and Gear Shift Indicator); Dkt. 339 at 2 n. 2 (Velocity justifying its lack of rebuttal evidence on FCA's non-infringing alternatives).

Any discussion of discovery disputes that occurred between the parties during fact discovery or suggestion of discovery deficiencies are improper, would cause a trial within a trial (as FCA would need to introduce counterevidence and argument on the alleged deficiency to correct the record), confuse the jury and distract from the ultimate issues to be decided. Courts in this district frequently exclude such evidence and argument from trial. *See, e.g., Chicago Import, Inc. v. Am. States Ins. Co.*, No. 09 CV 2885, 2016 WL 4366494, at *9 (N.D. Ill. Aug. 16, 2016) ("Rehashing discovery disputes in front of the jury would have been inefficient and confusing, especially when the discovery disputes between the parties were of marginal relevance to the merits of this case."); *Gomez v. City of Chicago*, No. 13 C 05303, 2015 WL 13651138, at *10 (N.D. Ill. June 29, 2015) ("[Plaintiff] will not be permitted to discuss *discovery disputes* in the presence of the jury."); *U.S. v. Smith*, No. 13 CR 00863, 2014 WL 12660536, at *2 (N.D. Ill. June 23, 2014) ("There [] must be no mention of . . . any discovery disputes."); *Stragapede v. City of Evanston*, No. 12 C 08879, 2016 WL 278854, at *7 (N.D. Ill. Jan. 22, 2016) (discussing order that "the parties refrain from raising discovery disputes in the jury's presence").

Because such evidence is irrelevant and would distract from the merits of the case in a manner confusing to the jury and unduly prejudicial to FCA, the Court should preclude, under Fed. R. Evid. 402 and 403, any reference to discovery disputes or any alleged discovery

deficiencies in the parties' production of documents or 30(b)(6) testimony or other alleged discovery disputes or litigation misconduct.

## VI. MOTION IN LIMINE NO. 6 – DR. MARTENS' REVIEW OF BOSCH SOURCE CODE MATERIALS

FCA moves to preclude Velocity from presenting evidence or eliciting testimony regarding FCA's expert, Dr. John Martens', inability to review Bosch source code materials. Third-party Bosch required all experts to sign a more restrictive protective order than the one already in place in this case, in order to review its source code materials. *See, e.g.* Dkt. 289. Dr. Martens' consulting company, Exponent Inc., was unable to sign this more restrictive protective order (which required that he disclose the identity of his clients to Bosch for a period of two years after the completion of this case) for business reasons. *Id.*; Ex. 7 at 84:2-85:23.

Because he has not signed onto the Bosch protective order, Dr. Martens has not viewed any Bosch source code materials. *See* Ex. 7 at 84:2-85:23. But he addressed Bosch components based on his review of FCA materials and technical materials that Bosch de-designated as non-source code materials. Ex. 8 at 65-68. His specific criticism of Velocity's infringement argument is that FCA's Adaptive Cruise Control and Forward Collision Warning features provide warnings to a driver based on a "time gap" between the vehicles—something that Dr. Martens has explained does not meet the claimed "speed/stopping distance table" limitation. *Id.* The Bosch source code materials are not necessary to present this specific criticism, and Velocity should not be permitted to try to detract or discount his opinions (in the jury's view) by arguing that Dr. Martens' analysis on this particular point is somehow incomplete or inaccurate because he did not view other Bosch protected materials.

It would be prejudicial to allow Velocity to elicit testimony regarding Dr. Martens' inability to view the Bosch source code materials. Testimony regarding what Dr. Martens could

and could not see, and discussion of the Bosch protective order would distract from Dr. Martens' specific criticism relating to the merits of the case, and would confuse the jury. Because such testimony is irrelevant and would confuse the jury, and is unduly prejudicial to FCA, the Court should preclude, under Fed. R. Evid. 402 and 403, any reference to Dr. Martens' ability to review Bosch source code materials.

## VII. MOTION *IN LIMINE* NO. 7 – DECLARATIONS OF DR. KAY STEPPER

FCA moves to preclude Velocity from entering into evidence the declarations of Dr. Kay Stepper, dated November 29, 2017 and March 16, 2018 ("the Stepper declarations"). Ex. 9 and 10. Dr. Stepper's declarations are impermissible hearsay—Velocity and its expert Mr. Christopher Wilson rely on the Stepper declarations as evidence of how Bosch's products operate, in support of Velocity's infringement theories. Fed. R. Evid. 801. But it appears that Velocity does not intend to call Dr. Stepper as a witness at trial. Ex. 11 at 2, 4. No hearsay exception under Fed. R. Evid. 803 covers these declarations; they are inadmissible and should be excluded.

Further, Velocity should be precluded from eliciting expert testimony from Mr. Wilson, where Mr. Wilson's opinion is based entirely on the inadmissible hearsay in the Stepper declarations. While Fed. R. Evid. 703 permits an expert to form an opinion based on inadmissible evidence, here, Mr. Wilson seeks to establish facts about how the Bosch products work based entirely on the Stepper declarations. This renders his testimony equally inadmissible. *See In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) (finding expert testimony cannot be a back door entrance for inadmissible evidence). As the Seventh Circuit has explained, "[i]f for example the expert witness (call him A) bases his opinion in part on a fact (call it X) that the party's lawyer told him, the lawyer cannot in closing argument tell the jury, "See we proved X through our expert witness, A.")"). *Id.* Velocity cannot rely on Mr. Wilson to

prove that the Bosch products operate in a certain way, by relying only on Mr. Stepper's hearsay evidence.

Because Velocity cannot utilize Fed. R. Evid. 703 to "use an expert witness as a screen against cross-examination" in order to "circumvent[] the rules of evidence," *id.*, the Court should also preclude any testimony from Mr. Wilson relying on the Stepper declarations.

Dated: August 10, 2018

Respectfully submitted,

*/s/ Frank C. Cimino, Jr.*

Frank C. Cimino, Jr.
Megan S, Woodworth
Jeffri A. Kaminski
Jonathan L. Falkler
Leslie A. Lee
**VENABLE LLP**
600 Massachusetts Ave NW
Washington, DC 20004
(202) 344-4569
(202) 344-4048
*fccimino@venable.com*
*jakaminski@venable.com*

P. Stephen Fardy
Brian W. Bell
Jonna M. Reilly
**SWANSON, MARTIN & BELL, LLP**
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
*sfardy@smbtrials.com*
*bbell@smbtrials.com*
*jreilly@smbtrials.com*

***Attorneys for Defendant FCA US LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on this 10th day of August, 2018 via the Court's CM/ECF system on all counsel of record.

*/s/ Frank C. Cimino, Jr.*
Frank C. Cimino, Jr.