IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VELOCITY PATENT LLC, | ) | |
| *Plaintiff,* | ) ) | No. 13 C 8419 |
| vs. | ) ) | Judge Thomas M. Durkin |
| FCA US LLC, | ) ) | |
| *Defendant.* | ) ) | |

**MEMORANDUM OPINION AND ORDER**

On August 7, 2018, the Court entered a Memorandum Opinion and Order granting in part and denying in part FCA's motion for summary judgment regarding infringement and invalidity and denying Velocity's motion regarding non-infringing alternatives. R. 442. On August 23, 2018, Velocity filed a motion asking the Court to reconsider a decision it made in that order regarding the construction of Claim 28 of the '781 Patent. R. 479. Familiarity with the Court's previous ruling is assumed. For the following reasons, the Court denies Velocity's motion.

**STANDARD**

This Court has "inherent authority" under Rule 54(b) to reconsider its interlocutory orders. *Janusz v. City of Chi.*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015); Fed. R. Civ. P. 54(b) (Non-final orders "may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). But motions for reconsideration "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole*

*v. CBI Indus.,* 90 F.3d 1264, 1269 (7th Cir. 1996). They are proper where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). Motions for reconsideration are not, however, "appropriate vehicle[s] for relitigating arguments that the Court previously rejected or for arguing issues that could have been raised during the consideration of the motion presently under reconsideration." *Caine v. Burge,* 897 F. Supp. 2d 714, 717 (N.D. Ill. 2012) (citing *Caisse,* 90 F.3d at 1270).

## ANALYSIS

On summary judgment, in relevant part, FCA asked the Court to construe Claim 28 in the same way as other claims in the '781 Patent that contained the same claim term. The Court relied on a previous claim construction order entered by Judge Darrah in ruling that Claim 28 should be construed with a means-plus-function limitation. In its motion to reconsider, Velocity asks the Court to reconsider its summary judgment decision as to Claim 28. But Velocity's filings make clear that it is really asking this Court to reconsider the claim construction order entered by Judge Darrah over two years ago in September 2016.[1]

Any motion to reconsider the claim construction order of September 21, 2016 should have been presented before Judge Darrah or before the summary judgment briefing and decision. It is inappropriate now. In any event, the Court finds that even

---

[1] The case was reassigned to this Court on February 27, 2017. R. 129.

if it were to reconsider the earlier claim construction order or its ruling on Claim 28, the result would be the same—the "a processor subsystem . . . said processor subsystem determining" language in the patent requires construction under 35 U.S.C. § 112, ¶ 6.[2] Velocity's motion to reconsider is therefore denied. *See, e.g., In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) (on appeal, "to prevail the appellant must not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below").

## I. Velocity Has Waived Reconsideration of Claim Construction

FCA filed its claim construction brief on December 23, 2015, R. 75, and Velocity responded to that brief, R. 85. It does not appear Velocity filed its own affirmative claim construction brief. The parties' briefs (including a surreply from Velocity, R. 97-1), alone comprised over 100 pages and included affidavits and declarations by experts, deposition testimony, and other exhibits. The Court conducted a *Markman* hearing on April 12, 2016. *See* Dkt. 132 of *Velocity Patent LLC v. Mercedes-Benz USA, LLC, et al.*, No. 1-13-cv-08413 (N.D. Ill. May 5, 2016) (transcript of April 12, 2016 *Markman* Hearing).

The Court's claim construction order was entered on September 21, 2016. It explained that, when deciding claim construction, courts first look at the intrinsic

---

[2] The America Invents Act amended and renamed § 112, ¶ 6. It is now § 112(f). Pub. L. No. 112-29, § 4(c), 125 Stat. 284, 296 (2011). However, the amended version of § 112 applies only to patent applications "filed on or after" September 16, 2012. *See* AIA § 4(e), 125 Stat. at 297. Because the application that led to the '781 Patent was filed before that date, the Court refers to the previous version (§ 112, ¶ 6). *See Zeroclick, LLC v. Apple Inc.,* 891 F.3d 1003, 1006 (Fed. Cir. 2018).

3

evidence in the record, including the patent itself, the claims, and the prosecution history. The Court may also consider extrinsic evidence such as expert testimony, dictionaries, and learned treatises. However, extrinsic evidence is to be used for the Court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims. R. 114 at 3. The Court construed the phrase, "a processor subsystem . . . said processor subsystem determining" contained in Claims 1, 7, 13, 17, 60, 69, and 76,[3] as requiring a means-plus-function construction. The Court explained that when a claim term lacks the word "means," § 112, ¶ 6 is presumed to not apply unless "the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* at 11 (citing *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)). The Court noted that an individual of ordinary skill in the art would understand that "processor" encompasses a microprocessor or microcontroller, which are structural terms, and thus the patent recited a sufficiently definite structure. *Id.* at 12.

The Court found that the presumption against application of § 112, ¶ 6 may also be overcome if the claim recites "function without reciting sufficient structure for

---

[3] Claim 28 was not included in this list. The parties dispute whether this was intentional or an oversight. FCA represented that Claim 28 was inadvertently omitted from the list of claims that included the same language, R. 350 at 10, which Velocity disputed, R. 370 at 10. FCA's representation is almost certainly true, but the Court finds that dispute irrelevant, because the claims would have been construed the same. Had the parties raised this issue at the time of the original claim construction order, it would have been a simple matter to resolve. Fault lies with both parties for that delay.

4

performing that function." *Id*. After analyzing the patent and the claims, the Court found that the patent provided for several different functions "that may be generally described as receiving information from the sensors, exchanging data with the memory subsystem, and determining whether to activate a notification circuit" but did not provide sufficient structure for performing those functions. *Id*. at 13. Accordingly, the Court held that the presumption against applying § 112(f) was overcome, and the patent required an algorithm to avoid indefiniteness. *Id*. (citing *EON Corp. IP Holdings LLC v. AT&T Mobility LLC*, 785 F.3d 616, 623 (Fed. Cir. 2015) ("A microprocessor or general purpose computer lends sufficient structure only to basic functions of a microprocessor. All other computer-implemented functions require disclosure of an algorithm.")). The Court adopted FCA's construction of the phrase, "a processor subsystem . . . said processor subsystem determining . . . ," as to each claim, noting Velocity offered no alternate construction. *Id*. at 14.

Though Velocity now argues Judge Darrah's opinion contains "manifest errors of law" warranting reconsideration, Velocity did not file a motion to reconsider before Judge Darrah. The parties spent the next year and a half conducting fact and expert discovery based on that claim construction. At least as early as December 4, 2017, FCA informed Velocity that it intended to construe Claim 28, which contains the same "processor subsystem determining" language, like the other claims with that language. *See* R. 394, ¶ 51 (FCA cites to an email stating: "Velocity's contention that the 'processor subsystem' term utilized in Claim 28 is somehow not to be constructed as a means-plus-function term . . . is another example of attempting to bypass the

5

Court's constructions."). Velocity again did not file a motion to reconsider the claim construction at that time, despite knowing FCA's position on the issue. The parties continued to conduct extensive discovery, knowing FCA's interpretation that Claim 28 should be construed with a means-plus-function limitation.

On May 22, 2018, the parties appeared before the Court on a motion hearing related to the summary judgment proceedings. Velocity noted concern about FCA's motion on summary judgment to include Claim 28 as requiring a means-plus-function limitation. At Velocity's insistence, the Court made clear that it would not substantively reconsider Judge Darrah's ruling, because the parties had conducted significant fact and expert discovery based on that claim construction, and because neither party had filed a motion to reconsider before him. R. 354 at 4:2-21 (transcript of May 22, 2018 hearing). Velocity had indicated it "could be very seriously prejudiced" by any reconsideration, explaining that claim construction should not be reconsidered after expert discovery. *Id.* at 3:17-25 (by Velocity's counsel James Shimota: "I mean, we—the reason we filed all these pages is, I mean, we're—we have a problem with the motion for reconsideration on the summary judgment issue. But, in particular, the request for briefing on claim construction, I mean, we're very concerned about this. I mean, to the extent that it's—claim construction is being taken out of order after expert discovery. To the extent that you rule on this, I mean, we think that there's a number of ways that this could go, and we could be very seriously prejudiced by this."). Velocity did not alert the Court that it believed the earlier claim construction of the '781 Patent was otherwise improper.

On summary judgment, neither side asked the Court to reconsider the original claim construction ruling. Instead, FCA asked the Court to construe Claim 28 the same as the remaining claims containing the same language. Velocity argued that Claim 28 should not be construed like the remaining claims with the "processor subsystem . . . said processor subsystem determining" language because Claim 28 recites specific sensors to draw data from, while the remaining claims provide for one or more sensors.[4] R. 370 at 15. Velocity did not make any other arguments regarding the proper construction of Claim 28 or any other claims. Instead, it contended FCA had waived its argument and that Velocity would be prejudiced by the Court's construction of Claim 28 with a means-plus-function limitation at the late stage of the proceedings. Velocity again argued that the Court should *not* redo its claim construction. *See* R. 370 at 10-11 ("Velocity made strategic decisions based on the claim construction order. . . . All fact depositions occurred after November 16, 2017 at FCA's request, after FCA concedes it knew about its 'mistake' but elected not to pursue the issue. FCA should have raised this issue before all fact depositions were taken. . . . If there is a 'do over,' Velocity, not FCA, will be prejudiced because Velocity has relied on that ruling."). *See also* R. 370 at 19 ("FCA is the only party hoping to do over claim construction. FCA has known since 2014 that Velocity disputed [FCA's position on whether Claim 28 was invalid as prior art] and could have asked Judge Darrah to construe the terms.").

---

[4] The claims have similar language. For example, Claim 1 uses "plurality of sensors"; Claim 17 uses "at least one sensor"; and Claim 60 uses "at least the data received from said [sensors]." Claim 28 states "data received from said [sensors]."

7

In its summary judgment ruling, the Court found Velocity's arguments unpersuasive. It noted Velocity had been aware of FCA's proposed construction of Claim 28 since at least December 4, 2017 and had taken discovery on both structures. R. 442 at 32-34. The Court granted FCA's motion, and held that "a processor subsystem . . . said processor subsystem determining . . . ," should be construed consistently through all the relevant claims, including Claim 28.

Now, on the eve of trial (trial was scheduled to begin on September 12, 2018),[5] Velocity seeks reconsideration of the original claim construction order through Claim 28 "because the Court adopted the reasoning from its original claim construction ruling without any additional findings when construing previously unconstrued claim 28." R. 481 at 7.

Velocity points to no reason for its delay in waiting two years to seek reconsideration of claim construction. Its arguments could have been made at any time during the claim construction proceedings or before summary judgment.

Velocity makes a perfunctory argument that it could not have raised "some of [its] arguments until recently due to significant Federal Circuit opinions issued within the past few months." R. 481 at 1. But none of the cases it cites in support of that argument cite any new principles of law. *See* R. 479 at 4; R. 481 at 2-5 (relying on *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1285 (Fed. Cir. 2014); *Chrimar Holding*

---

[5] On August 28, 2018, the Court informed the parties that it intended to deny Velocity's motion to reconsider and asked the parties whether they wished to proceed with the trial. The parties agreed that they would seek final judgment rather than proceed to trial, and the Court vacated the trial date. R. 482.

*Company, LLC v. ALE USA Inc.*, 732 Fed. App'x 876, 885 (2018) (decided May 8, 2018) (citing *Williamson* for the proposition that a claim term that has an understood meaning in the art as reciting structure is not a nonce[6] word triggering § 112,¶ 6); *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007 (2018) (decided June 1, 2018) (holding the district court failed to undertake the relevant inquiry on claim construction—"whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure" and make related factual findings based on intrinsic and extrinsic evidence).[7]

Velocity could and should have made its arguments—both as to the means-plus-function limitation and whether Claim 28 should have been included in that construction—before Judge Darrah. A motion to reconsider is not an opportunity to "relitigate[e] arguments that the Court previously rejected or [to argue] issues that

---

[6] In the patent context, "nonce" words are "[g]eneric terms such as 'mechanism,' 'element,' 'device,' and other nonce words that reflect nothing more than verbal constructs[.] [They] may be used in a claim in a manner that is tantamount to using the word 'means' because they 'typically do not connote sufficiently definite structure' and therefore may invoke § 112, para. 6." *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

[7] The court in *Zeroclick* relied on *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015), *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 702-04 (Fed. Cir. 1998), and *Cole v. KimberlyClark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996), as well as other cases to make its findings, but did not recite new law. As explained by *Williamson*, the district court necessarily must make factual findings related to intrinsic and extrinsic evidence for the Federal Circuit to review those determinations. *Williamson*, 792 F.3d at 1346 ("Regarding questions of claim construction, including whether claim language invokes 35 U.S.C. § 112, ¶ 6, the district court's determinations based on evidence intrinsic to the patent as well as its ultimate interpretations of the patent claims are legal questions that we review de novo."). At most, *Zeroclick* reiterated the analysis district courts must take during claim construction.

could have been raised during the consideration of the motion presently under reconsideration." *Caine,* 897 F. Supp. 2d at 717. *See also United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) ("Under the law of the case doctrine, a court generally should not reopen issues decided in earlier stages of the same litigation . . . [T]he doctrine authorizes such reconsideration of a previous ruling in the same litigation if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous."); *Galvan v. Norberg,* 678 F.3d 581, 587 (7th Cir. 2012) (explaining that reassigned judges should "abide by the rulings of the first judge unless some new development, such as a new appellate decision, convinces him that his predecessor's ruling was incorrect").

Velocity has had numerous opportunities over the last two years to file a motion to reconsider the Court's original claim construction order.[8] It failed to do so until three weeks before trial. The parties have spent years and significant resources litigating this case. The expert discovery alone is substantial—the parties' expert reports span hundreds of pages and the parties collectively engaged at least six experts. Velocity has waived its ability to ask for reconsideration of the Court's claim

---

[8] Indeed, when FCA filed a motion to reconsider parts of the Court's recent summary judgment ruling, R. 454, Velocity still did not file a motion to reconsider the previous claim construction ruling. Instead, it criticized FCA's motion, stating "the Court plainly spent substantial time pouring over the facts before rendering its decisions. While Velocity respectfully disagrees with some of this Court's rulings, only FCA has the temerity to suggest that the Court 'patently misunderstood' FCA or 'made an error not of reasoning but of apprehension.'" R. 462 at 2. Further, as the Court explained in its summary judgment opinion, FCA's request regarding construction of Claim 28 was not a request to redo the claim construction order, as Velocity requests here. Rather, it was a discrete request to apply the claim construction to Claim 28, which has identical language to the remaining claims.

10

construction order. *See Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1385 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 1213 (2017) (collecting cases for the proposition that a district court has discretion to find waiver regarding claim construction raised late in the proceedings).

## II. Even if the Court Were to Reconsider Claim Construction, It Would Reach the Same Result

Acknowledging Velocity's motion to reconsider, the Court will conduct a claim construction analysis as to Claim 28.[9] This analysis applies to the Court's first claim construction as well, because all the claims have similar language, and Claim 28 contains the narrowest construction. *See supra* n.4. The result is the same—the "a processor subsystem . . . said processor subsystem determining" language in '781 Patent is properly construed with a means-plus-function limitation.[10]

Claim 28 of the '781 patent recites an:

Apparatus for optimizing operation of a vehicle, comprising:

a plurality of sensors coupled to a vehicle having an engine, said plurality of sensors, which collectively monitor operation of said vehicle, including a road speed sensor, a manifold pressure sensor and a throttle position sensor;

a processor subsystem, coupled to each one of said plurality of sensors, to receive data therefrom;

---

[9] The Court relies on the parties' original claim construction briefs, the transcript of the *Markman* hearing, the summary judgment briefs, and the arguments the parties make on the motion to reconsider currently before the Court. Velocity has had many opportunities (before two judges) to convince the Court of why this language should not be construed with a means-plus-function limitation.

[10] Because the Court finds Claim 28 does not recite sufficient structure, the Court finds that the broader claims likewise fail to recite sufficient structure, and the presumption against § 112, ¶ 6 is overcome.

11

a fuel overinjection notification circuit coupled to said processor subsystem, said fuel overinjection notification circuit issuing a notification that excessive fuel is being supplied to said engine of said vehicle;

said processor subsystem determining whether to activate said fuel overinjection notification [circuit][11] based upon data received from said road speed sensor, said throttle position sensor and said manifold pressure sensor.

R. 344-1, '781 Pat., at 20.

Velocity first argues that the Court erred in holding that Claim 28 should be governed by 35 U.S.C. § 112, ¶ 6 because the claims are not drafted in the traditional means-plus-function format. But simply because a presumption exists does not mean that presumption cannot be overcome. The Court finds that the intrinsic and extrinsic evidence demonstrates that Claim 28 is properly construed with a means-plus-function limitation, as follows.

A patent claim may be expressed using functional language. *See* 35 U.S.C. § 112, ¶ 6; *Williamson*, 792 F.3d at 1347-49. § 112, ¶ 6 provides that a structure may be claimed as a "means . . . for performing a specified function" and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002). "To determine whether § 112, ¶ 6 applies to a claim limitation, our precedent has long recognized the importance of the

---

[11] Claim 28 states "fuel overinjection notification sensor" rather than "fuel overinjection notification circuit." R. 344-1 at 20:53. FCA represented that the parties treated the claim term as if it recites a "circuit" rather than a "sensor" and that the issue is not material to the limitation's claim construction. R. 350 at 11. *See also CBT Flint Partners, LLC v. Return Path, Inc.,* 654 F.3d 1353, 1358 (Fed. Cir. 2011) (district courts may correct obvious errors in patent claims).

12

presence or absence of the word 'means.'" *Williamson*, 792 F.3d at 1348. The failure to use the word "means" creates a rebuttable presumption (though not a "strong" presumption) that § 112, ¶ 6 does not apply. *Id.* at 1348-49. That presumption can be overcome, and § 112, ¶ 6 will apply, "if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.*

Here, there is a rebuttable presumption that § 112, ¶ 6 does not apply because the claim does not recite the word "means." Therefore, the analysis proceeds in two steps. First, the Court must determine whether the phrases are in means-plus-function form pursuant to 35 U.S.C. § 112, ¶ 6. *See Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1097 (Fed. Cir. 2014). If the Court determines that the phrase recites a means-plus-function limitation, then the Court proceeds to the next step and attempts "to construe the disputed claim term by identifying the corresponding structure, material, or acts described in the specification to which the term will be limited." *Id.* If the Court is unable to identify any "corresponding structure, material, or acts described in the specification," the claim term is indefinite. *Id.*

The claimed limitation in Claim 28 is "processor subsystem determining whether to activate said fuel overinjection notification sensor based upon data received from said road speed sensor, said throttle position sensor and said manifold pressure sensor." The function in Claim 28 is "determining whether to activate the fuel overinjection notification sensor" based on the data received from the three sensors. The "means for determining" that function is a "processor subsystem." But

"processor subsystem"[12] does not define sufficient structure for performing that function.[13] Instead, the term "processor subsystem" here refers only to a general category of what can perform the specified function and as a result, does not identify sufficient structure to avoid § 112, ¶ 6.

Both intrinsic and extrinsic evidence support that construction. First, the claim limitation is drafted in the same format as traditional means-plus-function limitations when the word "means" is substituted for "processor subsystem"—"means [for][14] determining whether to activate said fuel overinjection notification sensor based upon data received from said road speed sensor, said throttle position sensor and said manifold pressure sensor."

Second, "processor subsystem" in the '781 Patent is a nonce word, such as "device" or "module," because it is defined only by the function it performs, without

---

[12] FCA presented a dictionary definition that "subsystem" means "a major part of a system which itself has the characteristics of a system, usually consisting of several components." R. 76 at 8.

[13] The Court acknowledges that Judge Darrah found that "one of ordinary skill in the art would understand that 'processor' encompasses a microprocessor or microcontroller—structural terms." R. 114 at 12. Here, the Court finds "processor subsystem" is a nonce word because of the second part of the claim term ("subsystem") and the patent's description of "processor subsystem." The difference between Judge Darrah's ruling and the Court's ruling is not material, however, because Judge Darrah likewise found that the patent provided for several different functions "that may be generally described as receiving information from the sensors, exchanging data with the memory subsystem, and determining whether to activate a notification circuit" but did not provide sufficient structure for performing those functions. *Id.* at 13. As a result, the claim limitation is subject to § 112, ¶ 6.

[14] Courts apply the presumption "when a claim uses the word 'means' as a noun in the claim: a 'means' for doing something." *Robert Bosch, LLC v. Snap-On Inc.,* 769 F.3d 1094, 1098-99 (Fed. Cir. 2014).

providing additional structure. *See Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, 2015 WL 4937464, at *8 (W.D. Tex. Aug. 18, 2015) ("processing device" as used in the disputed claims was "purely functional drafting of the claims—and [a] lack of corresponding structure" required § 112, ¶ 6 construction); *Intellectual Ventures I, LLC v. Canon Inc.*, 2015 WL 1458035, at *14 (D. Del. Mar. 27, 2015) (claim term with "processing device" description did not disclose sufficient structure for "check[ing] if there is another scan job; and transfer[ing] the final image to the application program" because a person of ordinary skill in the art would not understand "processing device" to be inherently capable of performing the function). The patent explains only what a "processor subsystem" may be: "the system includes a processor subsystem, *for example*, a microprocessor." R. 344-1, '781 Patent, at 5:54-55 (emphasis added). Velocity's expert admitted during his deposition that a "processor subsystem" is not necessarily a microprocessor and that the meaning of "processor subsystem" depends on each claim limitation's function:

> Q. Okay. And your interpretation of the processor subsystem—what's getting that data—is a microprocessor?
> A. It can be. It can be others. . . . *Probably a microprocessor but it can be something else.*
> Q. Okay. Is it any microprocessor? Or does it have to be a specially programmed microprocessor?
> A. Actually, it—you don't have to—as I said in page 28, "that there are a number of ways to implement the claim structure—implement the claimed structure that would vary based on a number of factors, such as vehicle attributes, operating conditions, et cetera." So it's just—it has to do with what's in that claim limitation.

R. 96-1 at 161:5-19 (emphasis added).[15] But "merely listing examples of possible structures is insufficient to avoid invocation of § 112, ¶ 6. Indeed, means-plus-function language that defines a category in functional terms will typically cover examples of structures that fall within it." *Robert Bosch*, 769 F.3d at 1101.

Finally, the specification generally indicates that the system exchanges data but does not teach how the "processor subsystem" receives and processes data. *See id.* at 1100 (specification that did not teach how the "program recognition device" receives and processes signals, as the words "signal" and "process" are not even in the specification, did not recite sufficient structure); *compare M2M Sols. LLC v. Sierra Wireless Am., Inc.*, 2015 WL 5826816, at *3 (D. Del. Oct. 2, 2015) ("processing module" sufficiently contained structure because the claim term described the "how"—the "claim language stated that the particular manner by which the 'processing module'

---

[15] Velocity argues that because "FCA chose to have its claim construction expert remain silent on the proper construction of the 'processor subsystem' limitations, Velocity's expert's opinion that the claim term recites 'a specific type of structure' was unrebutted." *See* R. 481 at 8. The Court finds the expert report, R. 85-1 ¶ 63-65, less persuasive than his deposition testimony and the patent's intrinsic evidence. The Court finds particularly troubling the expert's finding that "there are a number of ways to implement the claimed structure that would vary based on a number of factors, such as vehicle attributes, operating conditions, etc. As a person of ordinary skill in the art, I would be able to implement the claimed 'determining, based upon data received from said plurality of sensors, when to activate said' claimed notification circuits in any number of ways based on the factors noted above." *Id.* at ¶ 65. The expert's finding that the function could be implemented "in any number of ways" supports both Judge Darrah and this Court's finding that the claim term fails to recite sufficient structure, and as a result, the claim term is subject to § 112, ¶ 6. *See Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009) ("A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function. To allow that form of claiming under section 112, paragraph 6, would allow the patentee to claim all possible means of achieving a function.").

16

can carry out authenticating is 'by determining if at least one transmission contains the coded number.'"). On summary judgment, Velocity argued that the sensors provide sufficient structure to the claim. R. 370 at 15. But the sensors only provide data inputs, they do not "determine." The claim here describes the input as coming from the sensors, and it describes the output, as activating the fuel overinjection notification circuit, but leaves a "black box" because it does not tell the reader *how* to get from the input to the output. FCA has overcome the presumption against applying § 112, ¶ 6—Claim 28 contains the same "black box recitation of structure for providing the same specified function as if the term 'means' had been used," and is appropriately construed with a means-plus-function limitation. *See Williamson*, 792 F.3d at 1350.[16]

---

[16] Comparing the claim here with the cases Velocity cites shows the distinction. In *Masimo Corp. v. Philips Elecs. N.A. Corp.*, 2015 WL 7737308, at *8 (D. Del. Dec. 1, 2015) the claim term at issue was "a processor configured to perform a method comprising . . . selecting one of the plurality of possible oxygen saturation values as an oxygen saturation measurement based upon an analysis to determine which of the plurality of possible oxygen saturation values corresponds to the oxygen saturation of the pulsing blood." Unlike here, that claim term describes how the processor performs the function—it selects one of the oxygen saturation values as an oxygen saturation measurement based upon an analysis of the oxygen saturation values and the oxygen saturation of the pulsing blood. In *Syncpoint Imaging, LLC v. Nintendo of Am. Inc.*, 2016 WL 55118, at *16 (E.D. Tex. Jan. 5, 2016), the claim at issue recited: "processing the image to detect position of the optical cursor and at least one property of the optical cursor and for converting the position and at least one property to corresponding commands to control the computer and move an internal cursor to a position corresponding to the optical cursor while the optical cursor remains within the output displayed on the screen." *See also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (holding that the objectives and outputs of the "circuit for monitoring a signal from the output terminal to generate a first feedback signal" limitation are "monitoring a signal from the output terminal" and "generating a first feedback signal"). In these cases, the input and how the input affected the output is described in the claim limitation (*i.e.* monitoring a signal and giving a feedback signal or moving the cursor based on the position), giving structure to the processor. Here, no such structure is given to "processor subsystem."

Because the Court finds § 112, ¶ 6 applies, it must "construe the disputed claim term by identifying the corresponding structure, material, or acts described in the specification to which the term will be limited." *Robert Bosch*, 769 F.3d at 1097. Here, an algorithm is required to "properly define[] the scope of the claim and prevent[] pure functional claiming." *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, 853 F.3d 1360, 1366 (Fed. Cir. 2017); *Cloud Farm Assocs. LP v. Volkswagen Grp. of Am., Inc.*, 674 F. App'x 1000, 1010 (Fed. Cir. 2017) ("Because this means-plus-function term is a computer-implemented one, the patent must disclose more than a general purpose processor; it must also include an algorithm to perform the function.").[17] As the Court described on summary judgment, the algorithm to activate the "fuel overinjection notification circuit," is illustrated in Figs. 2A-2B and described in 11:13-13:7 of the '781 Patent.[18]

---

[17] On summary judgment, FCA argued in the alternative that if Claim 28 is not construed with a means-plus-function limitation, it is invalid in view of prior art. R. 350 at 12-16. FCA contended that "Hibino" is a prior art patent from Honda issued in 1987, nearly a decade before the '781 Patent's filing date and discloses a driver notification system that also has a road speed sensor, a manifold pressure sensor, and a throttle sensor, like Claim 28. The Court did not reach the issue of invalidity because it construed Claim 28 with a means-plus-function limitation.

[18] Velocity argues this construction improperly excludes relevant portions of the corresponding algorithm. But Velocity failed to point to what it believes is the correct algorithm during claim construction. *See* R. 114 ("[Velocity] provides no alternative constructions for a means-plus-function construction."). On summary judgment, Velocity indicated the patent described a third algorithm as well. R. 370 at 14. But that "third algorithm," representing boxes 106-108 of Figure 2B, is only a direction to repeat the notification until engine speed (through RPM) is decreasing. *See* R. 344-1 at 13:8-18. Unlike the acceleration and the lugging scenarios, which represent separate algorithms for determining whether to activate the fuel overinjection notification circuit, *see* R. 442 at 23, this "third algorithm" is merely part of the algorithm that notifies the system to continuing "looping." On its own, it does not

Because Velocity could not present any evidence that FCA's products infringed that algorithm, Velocity could not show a disputed fact on infringement, which is why the Court granted summary judgment. There is no valid reason given to reconsider that decision here.

## CONCLUSION

For the foregoing reasons, the Court denies Velocity's motion for reconsideration, R. 479.

ENTERED:

Dated: September 4, 2018

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

---

point to an algorithm to determine whether to activate the fuel overinjection notification, and has no effect on the decision here.